UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SCHEINDLIN

------------------------------------ X

TIME SQUARE CONSTRUCTION, INC., :

       Plaintiff, :

    -against- :

MASON TENDERS DISTRICT COUNCIL OF :
GREATER NEW YORK & LONG ISLAND
and CONSTRUCTION GENERAL :
LABORERS JATC, LOCAL UNION NO. 79,

      Defendants.

------------------------------------ X

'07 CIV 7250

07 CIV. _____ (   )

**COMPLAINT FOR
INJUNCTIVE RELIEF**

AUG 14 2007

U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff, Time Square Construction, Inc. ("Time Square" or "Plaintiff"), by through its

attorneys, McDermott Will and Emery LLP, as and for its complaint against Mason Tenders

District Council of Greater New York & Long Island ("MTDC") and Construction General

Laborers JATC, Local Union No. 79 (the "Union" or "Local 79")(collectively the "Defendants")

allege as follows:

## NATURE OF THIS ACTION

    1.    This is an action for injunctive relief enjoining MTDC and Local 79 from

pursuing claims against Time Square in any arbitration brought pursuant to the multi-employer

collective bargaining agreement (the "CBA") between the Building Contractors Association, Inc.

and MTDC, including but not limited to the arbitration initiated by the demand for arbitration

dated July 13, 2007 from MTDC and Local 79 to Time Square and Navillus Tile, Inc.

("Navillus").

## THE PARTIES

    2.    Time Square is a New York company with its principal place of business at 355

Lexington Avenue, 17th Floor, New York, New York 10017.  Time Square is an employer

within the meaning of Section 2(2) of the National Labor Relations Act (hereinafter referred to as "Act"), 29 U.S.C. § 152(2).

3.      MTDC is an association of labor organizations with its principal place of business at 520 Eighth Avenue, Suite 650, New York, New York 10018.  MTDC is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

4.      Local 79 is a labor organization with its principal office located at 520 Eighth Ave New York, New York 10018.  Local 79 is a labor organization within the meaning of Section 2(5) of the Act.

## JURISDICTION OF THIS COURT

5.      This Court has jurisdiction pursuant to Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, which creates federal jurisdiction for:

> suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

## BACKGROUND FACTS

6.      Time Square is a New York City commercial real estate developer and construction management company.  Kevin and Donal O'Sullivan own Time Square.  Kevin O'Sullivan is Time Square's CEO and is responsible for the company's day-to-day operations. Donal O'Sullivan is not involved in the day-to-day operations of Time Square.

7.      Time Square's employees are non-union management level employees.    Time Square contracts with both union and non-union subcontractors to do construction on projects it develops.

8.      Navillus is a contractor that specializes in foundation and superstructure concrete, high end masonry, tiling and stone. Navillus works as a sub-contractor on construction projects, and has only served as general contractor on limited public renovation projects. Navillus has never been a general contractor on any private projects involving new construction. Donal and Kevin O'Sullivan own Navillus. Donal O'Sullivan is the CEO of Navillus and is responsible for the company's day-to-day operations. Kevin O'Sullivan is not involved in the day-to-day operations of Navillus.

9.      Time Square and Navillus are separate legal entities that operate wholly independently. Time Square and Navillus have separate offices, leases, financial records, payroll accounts, bank accounts and insurance policies. Navillus' officers have no control over the daily operations or finances of Time Square, and vice versa.

10.      There is no overlap between the employees of Time Square and the employees of Navillus. Each company is solely responsible for hiring, firing and supervising its employees.

11.      Time Square and Navillus operate in different markets. Time Square is a commercial real estate developer that may also serve as a construction manager on construction projects in the private sector. Navillus specializes in foundation and superstructure concrete, masonry, tile, and stone laying and is generally a sub-contractor on projects. Navillus only operates as a general contractor in the construction industry on publicly owned buildings. Time Square's client is the owner of the site, while Navillus' client is the general contractor. Therefore, even if Time Square and Navillus work on the same project, they serve distinct functions and answer to different clients.

12.      Navillus is a member of the Building Contractors Association, Inc. ("BCA"). The BCA is party to a collective bargaining agreement with MTDC (the "CBA"). MTDC is an association of various labor organizations in the New York City area and their members. Local

79 is a constituent member of the MTDC. The CBA sets forth the terms and condition under which BCA members employ members of the local unions that are constituents of the MTDC.

13. Time Square is not, and at all relevant times has never been, a constituent of the BCA. Time Square is not a signatory to any CBA with MTDC or Local 79.

**The Project and Local 79's Complaints**

14. Time Square is currently the construction manager on a construction project located at 785 Eighth Avenue, New York, New York (the "Project") for which it is also developing. The Project involves the construction of a 43-story concrete-framed building. Time Square has engaged both union and non-union sub-contractors to complete the construction of the building. Time Square and Navillus entered into an arms length agreement under which Time Square sub-contracted the concrete masonry work on the Project to Navillus.

15. Time Square hired a student on summer vacation, Fergal Cronan, to perform clean up tasks such as sweeping the removing debris and garbage from the Project site during his summer vacation. Soon thereafter, a representative of Local 79 approached Navillus and asked it to put a Local 79 laborer on the Project to do the same tasks as Mr. Cronan. The Navillus representative advised Local 79 that Navillus was not involved in hiring laborers and referred the matter to Time Square.

16. Local 79 then approached Time Square directly and demanded it to "put some laborers on the job." As a courtesy and in effort to avoid a labor dispute, Time Square agreed to hire a Local 79 laborer to perform general clean up tasks at the Project site. However, Time Square advised Local 79 that they wanted a laborer who held a safety manager's license and could serve as site safety supervisor in case the regular sight safety supervisor was out. Local 79 agreed, and on June 4, 2007, Nicholas Albanese ("Mr. Albanese"), a Local 79 laborer, began

working at the Project as a Time Square employee.  Mr. Albanese reported to Time Square directly at all times.

17.    Because it is not a party to any CBAs, Time Square uses a "paymaster system" when it hires a union employee in order to ensure that all Union fringe benefit contributions can be made on behalf of the employee.  Here, with the consent and knowledge of Local 1199, Time Square engaged Navillus, a party to the CBA with Local 79, to serve as paymaster for Mr. Albanese.  The paymaster issues payroll checks and makes appropriate contributions to the union's benefit funds or dues.  Navillus did not supervise or otherwise have any employment interest in Mr. Albanese.  The "paymaster system" is a common practice in the construction industry.  Other than an agreement to hire a Local 79 laborer and provide him Union benefits through the "paymaster system," Time Square and Local 79 had no other agreements.

18.    Once on the Project, Mr. Albanese did not report to work as scheduled, refused to complete the assigned tasks for which he was hired, demanded pay for days he did not work and threatened to have the Project shut down if he was not paid more money.   Time Square advised Local 79 of its dissatisfaction with Mr. Albanese as an employee and asked that he be removed from the Project and replaced by another Local 79 member.  Local 79 refused to replace Mr. Albanese.

19.    During that same time frame, Navillus advised Time Square that it could no longer serve as paymaster for Mr. Albanese.  Time Square then arranged for Par Wrecking, another contractor with a contract with Local 79, to replace Navillus and serve as paymaster for Mr. Albanese.

20.    On Friday June 15th, Mr. Albanese refused to accept his paycheck from Par Wrecking.  He was advised that his refusal to accept the check meant he could no longer be on-

site. Thereafter, Mr. Albanese did not enter the site and repeatedly refused to accept his paycheck.

21.    On or about June 15, 2007, Mr. Albanese voluntarily terminated his employment with Time Square.

22.    Thereafter, Local 79 began picketing Time Square outside of the Project site, protesting the circumstances of Mr. Albanese's employment and termination. Some union sub-contractors' employees refused to cross the picket line, including Navillus'.

23.    On or about June 26, 2007, Time Square terminated the sub-contracts of Navillus and others on the project because they could not perform during Local 79's picketing.

24.    On or about July 5, 2007, Time Square reinstated its sub-contract with Navillus after Time Square reached a settlement agreement with Local 79 regarding Mr. Albanese's employment, which settlement included hiring another Local 79 laborer to work on the Project with another Local 79 contractor acting as "paymaster."

25.    On or about July 13, 2007, MTDC sent a letter to both Navillus and Time Square noticing its intention to arbitrate complaints against Navillus and Time Square relating to the Project, under the Step 3 of the CBA ("Demands").

26.    In its July 13th letter, MTDC stated that it intends to hold Time Square liable for violations under the CBA, relating to the employment and termination of Mr. Albanese, as a joint employer, single employer and/or alter ego of Navillus. Specifically, Local 79 seeks to arbitrate whether Time Square: (i) did not offer Mr. Albanese overtime employment; (ii) did not provide Mr. Albanese timely payment for time worked and owes him waiting time – $100.00 a day – for all time lapsed since the unpaid amounts were due; (iii) violated the CBA by terminating Mr. Albanese; and (iv) violated the CBA by hiring non-union laborers.

27.     On or about July 18, 2007, counsel for Time Square responded to Defendants' Demands, specifically stating that Time Square is a separate entity from Navillus and not a party to the CBA, thus, Time Square is not under any obligation to engage in the demanded arbitration. Time Square also requested clarification concerning the basis for Defendants' Demands. Defendants refused to provide such clarification.

28.     On or about July 19, 2007, Time Square sent a letter to Defendants, again opposing their claims that Time Square was subject to the CBA and obligated to arbitrate Defendants' complaints against it.   Time Square also indicated that without a proper basis to obligate it to arbitrate, it would not participate in any such arbitration.

29.     On August 1, 2007, Defendants' unilaterally sent a letter to Roger Maher ("Mr. Maher"), designating him as the arbitrator in its dispute with Time Square and Navillus and requesting Mr. Maher to contact the parties to schedule an arbitration on the issues raised by Defendants.  Presently, arbitration has not been scheduled.

## FIRST CAUSE OF ACTION FOR INJUNCTIVE RELIEF

30.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-29 in their entirety.

31.     Time Square is not a party or a signatory the CBA and does not have an obligation to arbitrate under the CBA.

32.     Time Square is not an alter-ego of, or "joint" or "single" employer with Navillus:

a.      Time Square and Navillus are separate legal entities that operate wholly independently.

b.      Time Square and Navillus' operations are wholly unrelated – the companies have separate offices, financial records, payroll accounts and bank accounts.

c. Navillus' officers have no control over the daily operations or finances of Time Square, and vice versa.

d. There in no overlap between the employees and officers of Time Square and the employees and officers of Navillus.

e. Each company is solely responsible for hiring, firing and supervising its employees.

f. Time Square and Navillus operate in distinct segments of the construction industry.

g. Time Square and Navillus do not share a client base.

33. Time Square will be irreparably harmed absent injunctive relief because it will be forced to expend considerable time and resources defending itself in an arbitration brought under a CBA to which it is not a party.

34. That harm is imminent, as MTDC and Local 79 have already unilaterally selected an arbitrator, insist that Time Square participate in the arbitration, and are threatening to seek to enforce any award rendered against Time Square even if the company does not participate in the arbitration.

35. MTDC and Local 79 will not be harmed if the requested relief is granted because Defendants do not have a contractual or other right to arbitrate any purported disputes with Time Square.

**WHEREFORE,** Plaintiff demands judgment against MTDC and Local 79 as follows:

(a) for a preliminary, and permanent injunction staying the arbitration against Time Square; and

(b) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
      August 14, 2007

Respectfully submitted,

By: _____
    Joel E. Cohen (JEC 5312)

McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
(212)547-5400

Attorneys for Plaintiff
Time Square Construction, Inc.

NYK 1114915-2.079158.0011