UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
TIME SQUARE CONSTRUCTION, INC.,          :

        Plaintiff,                                              :

                                          07 CIV. __7250__ (SAS)(ATP)

      -against-                                              :

MASON TENDERS DISTRICT COUNCIL OF   :   AFFIDAVIT OF FERGAL CONEFREY
GREATER NEW YORK & LONG ISLAND             IN SUPPORT OF PLAINTIFF'S
and CONSTRUCTION GENERAL                  :   **MOTION FOR INJUNCTIVE RELIEF**
LABORERS JATC, LOCAL UNION NO. 79,

        Defendants.
------------------------------------------------- X

      STATE OF NEW YORK     )
                                   )   ss.:
      COUNTY OF NEW YORK   )

FERGAL CONEFREY, being duly sworn, deposes and says:

      1.      I am a Project Manager with Time Square Construction, Inc. ("Time Square" or "Plaintiff"). I respectfully submit this Affidavit in support of Time Square's motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for injunctive relief enjoining defendants, Mason Tenders District Council of Greater New York & Long Island ("MTDC") and Construction General Laborers JATC, Local Union No. 79 (the "Union" or "Local 79")(collectively the "Defendants"), from pursuing claims against Time Square in any arbitration brought pursuant to the multi-employer collective bargaining agreement (the "CBA") between the Building Contractors Association, Inc. and MTDC, including but not limited to the arbitration initiated by the demand for arbitration dated July 13, 2007 from MTDC and Local 79 to Time Square and Navillus Tile, Inc. ("Navillus").

2.  I am fully familiar with the facts and circumstances set forth herein and make this affidavit based upon my personal knowledge.

3.  I work as a Project Manager for Time Square, a commercial real estate developer and construction management company with offices located at 355 Lexington Avenue, 17th Floor, New York, New York 10017.

4.  In my role as a Project Manager, I coordinate various sub-contractors on projects being managed by Time Square and report to Kevin O'Sullivan ("Mr. O'Sullivan"), Time Square's CEO, who is responsible for the company's day-to-day operations, and Kieran Power ("Mr. Power"), Time Square's Project Executive. At present, I am the Project Manager for a construction project located at 785 Eighth Avenue, New York, New York (the "Project").

5.  The Project involves the construction of a 43-story concrete-framed building. On the Project, Time Square employs Mr. Power, myself, Site Supervisor Liam Kelly ("Mr. Kelly") and Fergal Cronan ("Mr. Cronan"), a student on summer vacation. Time Square has engaged both union and non-union sub-contractors to complete the construction of the building.

6.  Time Square sub-contracted the concrete masonry work on the Project to Navillus. Navillus is a contractor with offices in Long Island City, that specializes in fundatiosn and superstructure concrete, high end masonry, tiling and stone and works as a sub-contractor on construction projects in the New York City area.

7.  Navillus is also a union contractor and a member of the Building Contractor's Association ("BCA"), a multi-employer bargaining association, which has entered into contracts with various building trades unions in the New York City area. Therefore, except for its management employees, Navillus employees are union members. Local 79 is one of the local

unions with which Navillus has a CBA. Time Square is not, and at all relevant times has never been, a union employer or a party to a CBA. More importantly, Time Square is not a signatory to *any* CBA with Local 79 or any other union.

8. In or about May 2007, Time Square hired a student on summer vacation, Mr. Cronan, to perform clean up tasks such as sweeping and removing debris and garbage from the Project site during his summer vacation. Mr. Kelly and I supervise Mr. Cronan. Soon thereafter, a representative of Local 79 approached a supervisor of Navillus and asked it to put a Local 79 laborer on the Project to do the same tasks as Mr. Cronan. The Navillus supervisor told me that he advised Local 79 that Navillus was not the general contractor, Time Square was, and that Navillus was not involved in hiring these types of laborers. He asked if I could handle the matter.

9. Thereafter, Local 79 approached Mr. Power directly and demanded that Time Square "put some laborers on the job." As a courtesy and in effort to avoid a labor dispute, Mr. O'Sullivan and Mr. Power agreed to hire a Local 79 laborer. During the last week of May 2007, I told John Brosnan, a Local 79 representative, that Time Square agreed to hire a Local 79 laborer to perform general clean up tasks at the Project site. I also advised Local 79 that Time Square wanted a laborer who held a safety manager's license and could serve as site safety supervisor in case the regular sight safety supervisor was out. Local 79 agreed, and on June 4, 2007, Nicholas Albanese ("Mr. Albanese"), a Local 79 laborer, began working at the Project as a Time Square employee. Mr. Albanese reported to Mr. Kelly and me directly at all times.

10. Time Square is not a party to any CBAs, accordingly, it uses a "paymaster system" if it needs to hire a union employee in order to ensure that all Union fringe benefit

contributions can be made on behalf of the employee. Here, with the consent and knowledge of Local 79, Time Square engaged Navillus, a party to the CBA with Local 79, to serve as paymaster for Mr. Albanese. The paymaster issues payroll checks and makes appropriate contributions to the union's benefit funds or dues. Navillus did not supervise or otherwise have any employment interest in Mr. Albanese. The "paymaster system" is a common practice in the construction industry. Other than an agreement to hire a Local 79 laborer and provide him Union benefits through the "paymaster system," Time Square and Local 79 had no other agreements.

11. Once on the Project, Mr. Albanese did not report to work as scheduled, refused to complete the assigned tasks for which he was hired, demanded pay for days he did not work and threatened to have the Project shut down if he was not paid more money. I advised Local 79 of Time Square's dissatisfaction with Mr. Albanese as an employee and asked that he be removed from the Project and replaced by another Local 79 member. Local 79 refused to replace Mr. Albanese.

12. During that same time frame, Navillus advised me that it could no longer serve as paymaster for Mr. Albanese. Time Square management then arranged for Par Wrecking, another contractor with a contract with Local 79, to replace Navillus and serve as paymaster for Mr. Albanese.

13. On Friday June 15th, Mr. Kelly and I attempted to give Mr. Albanese his weekly paycheck. Mr. Albanese refused to accept his paycheck from Par Wrecking. I advised him that his refusal to accept the check meant he could no longer be on-site. Thereafter, Mr. Albanese did

not enter the site and repeatedly refused to accept his paycheck. By the foregoing actions, on or about June 15, 2007, Mr. Albanese voluntarily terminated his employment with Time Square.

14. Thereafter, Local 79 began picketing Time Square outside of the Project site, protesting the circumstances of Mr. Albanese's employment and termination. Some union sub-contractors' employees refused to cross the picket line, even though Time Square set up a reserve gate for the Union employees, including Navillus' employees.

15. Because Navillus' employees refused to go to work, and construction needed to go forward, on or about June 26, 2007, Kevin O'Sullivan terminated Navillus' sub-contract and hired another sub contractor to complete the concrete work.

16. On or about July 5, 2007, Kevin O'Sullivan reinstated Time Square's sub-contract with Navillus after Time Square reached a settlement agreement with Local 79 regarding Mr. Albanese's employment, which settlement included hiring another Local 79 laborer to work on the Project with another Local 79 contractor acting as "paymaster." At this point, Time Square believed the issues with Local 79 were resolved.

17. Despite the settlement, approximately a week later, on or about July 13, 2007, MTDC sent a letter to both Navillus and Time Square noticing its intention to arbitrate under the CBA between Navillus and MTDC, complaints relating to the Project and Mr. Albanese's employment, alleging that Navillus and Time Square were a single employer, joint employer or alter ego. The July 13 letter is attached as Exhibit A to the Affidavit of Kevin O'Sullivan.

18. However, Time Square and Navillus are separate companies. As noted above, Time Square and Navillus have separate offices, Time Square in Manhattan and Navillus in Long Island City and employs completely different employees. Specifically, on the Project,

Time Square employs Project Executive Mr. Power, myself, Site Supervisor Mr. Kelly and Mr. Cronan. None of the aforementioned individuals works for Navillus. Further, neither myself, Mr. Power, Mr. Kelly or Mr. Cronan supervise any of the Navillus employees on the Project.

19. No previous motion has been made for the relief requested herein or any similar relief.

**WHEREFORE**, it is respectfully requested that this Court enter an Order enjoining Defendants.

_____
FERGAL CONEFREY

Duly sworn to before me this
14 day of August 2007

_____

Leila Rachele Pittaway
Notary Public - State of New York
Qualified in Kings County
Reg. #02PI6154921
Commission Expires: 10/23/2010

NYK 1115694-2.079158.0011