UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
TIME SQUARE CONSTRUCTION, INC.,        :

        Plaintiff,                    :

     -against-                         :      07 CIV. 7250    SAS (AJP)

MASON TENDERS DISTRICT COUNCIL OF      :   AFFIDAVIT OF KEVIN O'SULLIVAN
GREATER NEW YORK & LONG ISLAND             IN SUPPORT OF PLAINTIFF'S
and CONSTRUCTION GENERAL               :   MOTION FOR INJUNCTIVE RELIEF
LABORERS JATC, LOCAL UNION NO. 79,

        Defendants.
------------------------------------- X

STATE OF NEW YORK         )
                          )  ss.:
COUNTY OF NEW YORK        )

KEVIN O'SULLIVAN, being duly sworn, deposes and says:

1. I am the owner and CEO of Time Square Construction, Inc. ("Time Square" or "Plaintiff"). I respectfully submit this Affidavit in support of Time Square's motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for injunctive relief enjoining Mason Tenders District Council of Greater New York & Long Island ("MTDC") and Construction General Laborers JATC, Local Union No. 79 (the "Union" or "Local 79")(collectively the "Defendants") from pursuing claims against Time Square in any arbitration brought pursuant to the multi-employer collective bargaining agreement (the "CBA") between the Building Contractors Association, Inc. and MTDC, including but not limited to the arbitration initiated by the demand for arbitration dated July 13, 2007 from MTDC and Local 79 to Time Square and Navillus Tile, Inc. ("Navillus").

2. I am fully familiar with the facts and circumstances set forth herein and make this affidavit based upon my personal knowledge.

3. My brother Donal O'Sullivan and I own Time Square, a commercial real estate developer and construction management company with offices at 355 Lexington Avenue, 17th Floor, New York, New York 10017. I am also the CEO of Time Square.

4. In my role as Time Square's CEO, I am responsible for the company's day-to-day operations. Donal is not involved in the day-to-day operations of Time Square.

5. At present, Time Square is developing a construction project located at 785 Eighth Avenue, New York, New York (the "Project"). Time Square is also the construction manager for the project. The Project involves the construction of a 43-story concrete-framed building.

6. Time Square's employees working on the project include Project Executive Kieran Power ("Mr. Power"), Project Manager Fergal Conefrey ("Mr. Conefrey"), Site Supervisor Liam Kelly ("Mr. Kelly") and Fergal Cronan ("Mr. Cronan"), a student on summer vacation. Time Square also engaged both union and non-union sub-contractors to complete the construction of the building. Time Square sub-contracted the concrete masonry work on the Project to Navillus.

7. Navillus is a union contractor with offices in Long Island City that specializes in foundation and superstructure concrete, high end masonry, tiling and stone and works as a sub-contractor on construction projects in the New York City area. My brother Donal and I own Navillus. Donal is the CEO of Navillus and is responsible for the company's day-to-day operations. I am not involved in the day-to-day operations of Navillus.

8. Navillus is a member of the Building Contractors Association, Inc. ("BCA"). The BCA is party to a multi-employer collective bargaining agreement with MTDC (the "CBA"). MTDC is an association of various labor organizations in the New York City area and their members. Local 79 is a constituent member of the MTDC.

9. I understand that the CBA sets forth the terms and condition under which BCA members employ members of the local unions that are constituents of the MTDC.

10. Time Square is not, and at all relevant times has never been, a constituent of the BCA. Time Square is not a signatory to any CBA with MTDC or Local 79.

**The Background of the Dispute with MTDC and Local 79**

11. In or about May 2007, I hired a student on summer vacation, Mr. Cronan, to perform clean up tasks such as sweeping and removing debris and garbage from the Project site during his summer vacation. Mr. Conefrey and Mr. Kelly supervise Mr. Cronan.

12. Soon after I hired Mr. Cronan, Mr. Conefrey told me that a Local 79 representative asked a Navillus supervisor to put a Union laborer on the Project to perform the same tasks as Mr. Cronan.

13. Thereafter, Mr. Power told me that a Local 79 representative approached him directly and demanded that Time Square "put some laborers on the job." Mr. Power and I discussed Local 79's demand and decided that, as a courtesy and in effort to avoid a labor dispute, we would hire a Local 79 laborer to perform general clean up tasks at the Project site.

14. Upon reaching our decision, I instructed Mr. Conefrey to tell Local 79 that Time Square wanted a laborer who held a safety manager's license and could serve as site safety

supervisor in case the regular sight safety supervisor was out. Mr. Conefrey told me that Local 79 agreed to the terms.

15. On or about June 4, 2007, Nicholas Albanese ("Mr. Albanese"), a Local 79 laborer, began working at the Project as a Time Square employee. Mr. Albanese reported to Mr. Conefrey and Mr. Kelly directly at all times.

16. In order for Mr. Albanese to receive his union fringe benefits, Time Square had to use a "paymaster" system. By way of explanation, since Time Square is not a party to any CBAs, it cannot make union benefit contributions on behalf of union employees. In order to assure contributions are made for a union employee's fringe benefits, we use another company that is party to the relevant CBA to act as "paymaster." The paymaster issues payroll checks to the union employee and makes appropriate contribution to the union's benefit funds and Time Square reimburses it. In other words, the paymaster is nothing more than a bureaucratic conduit for payment. The "paymaster" system is a common practice in the construction industry.

17. In order to assure that Mr. Albanese received his union benefits, we engaged Navillus, a party to the CBA with Local 79, to serve as paymaster with the consent and knowledge of Local 79.

18. Navillus did not supervise or otherwise have any employment interest in Mr. Albanese.

19. Once on the Project, Mr. Conefrey told me that Mr. Albanese did not report to work as scheduled, refused to complete the assigned tasks for which he was hired, demanded pay for days he did not work and threatened to have the Project shut down if he was not paid more money. Mr. Conefrey also told me that he had advised representatives of Local 79 that we were

dissatisfied with Mr. Albanese's work, and asked that he be removed from the Project and replaced by another Local 79 member. Local 79 refused.

20. During that same time frame, Navillus advised Mr. Conefrey that it could no longer serve as paymaster for Mr. Albanese. Mr. Power arranged for Par Wrecking, another sub-ontractor with a contract with Local 79, to replace Navillus and serve as paymaster for Mr. Albanese.

21. I was advised by my staff that, on or about Friday June 15th, Mr. Albanese refused to accept his paycheck from Par Wrecking. Mr. Conefrey told me that he advised Mr. Albanese that his refusal to accept the check meant he could no longer be on-site. I instructed Mr. Kelly not to allow Mr. Albanese on site if he did not accept his paycheck. Thereafter, Mr. Albanese did not enter the site and repeatedly refused to accept his paycheck.

22. On or about June 15, 2007, Mr. Albanese voluntarily terminated his employment with Time Square.

23. Thereafter, Local 79 began picketing Time Square outside of the Project site. Some union sub-contractors' employees refused to cross the picket line, including Navillus'.

24. On or about June 26, 2007, I terminated Time Square's sub-contract with Navillus' and other union sub-contractors on the project because they refused to perform during Local 79's picketing.

25. On or about July 5, 2007, I reinstated Time Square's sub-contract with Navillus after Time Square reached a settlement agreement with Local 79 regarding Mr. Albanese's employment, which settlement included hiring another Local 79 laborer to work on the Project with another Local 79 contractor acting as "paymaster."

26. On or about July 13, 2007, MTDC sent a letter to both Navillus and Time Square noticing its intention to arbitrate complaints against Navillus and Time Square relating to the Project, the CBA between the MTDC and the CBA ("Demands"). A true and correct copy of the Demand is attached as Exhibit A.

27. On or about July 18, 2007, Time Square's attorneys, McDermott Will & Emery LLP, responded to Defendants' Demands, specifically stating that Time Square is a separate entity from Navillus and not a party to the CBA, thus, Time Square is not under any obligation to engage in the demanded arbitration. Time Square also requested clarification concerning the basis for Defendants' Demands. Defendants refused to provide such clarification. True and correct copies of McDermott's July 18 letter and Defendant's response are attached as Exhibits B & C.

28. The next day, Time Square sent a letter to Defendants, again opposing their claims that Time Square was subject to the CBA and obligated to arbitrate Defendants' complaints against it. Time Square also indicated that without a proper basis to obligate it to arbitrate, it would not participate in any such arbitration. True and correct copies of McDermott's July 19 letter and Defendant's response are attached as Exhibits D & E.

29. On August 1, 2007, Defendants' unilaterally sent a letter to Roger Maher ("Mr. Maher"), designating him as the arbitrator in its dispute with Time Square and Navillus and requesting Mr. Maher to contact the parties to schedule an arbitration on the issues raised by Defendants. A copy of that letter is attached as Exhibit F.

30. Presently, arbitration has not been scheduled.

**The Background of Times Square and Navillus**

31.     Time Square and Navillus are separate legal entities that operate wholly independently.

32.     Time Square and Navillus have separate offices, leases, financial records, payroll accounts, bank accounts and insurance policies.

33.     Navillus' officers have no control over the daily operations or finances of Time Square, and vice versa.

34.     There is no overlap between the employees of Time Square and the employees of Navillus. Each company is solely responsible for hiring, firing and supervising its employees.

35.     Moreover, Time Square and Navillus employee different types of employees. More specifically, Time Square's employees are non-union management level employees. In contrast, Navillus' employees are unionized individuals skilled in specific areas of masonry and concrete.

36.     Time Square and Navillus have different business purposes.

37.     Time Square is a commercial real estate developer that may also serve as a construction manager on construction projects it develops in the private sector. Time Square contracts with both union and non-union subcontractors to do construction on projects it develops. Time Square's client is the owner of the site.

38.     Navillus specializes in foundation and superstructure concrete, masonry, tile, and stone laying and is generally a sub-contractor on projects. Navillus has only served as general contractor on limited public projects involving renovation to existing buildings. Navillus has never been a general contractor on any private projects involving new construction. Navillus

only operates as a general contractor in the construction industry on publicly owned buildings. Generally, Navillus' client is the general contractor on the site.

39. Even if Time Square and Navillus work on the same project, they serve distinct functions and answer to different clients.

40. No previous motion has been made for the relief requested herein or any similar relief.

WHEREFORE, it is respectfully requested that this Court enter an Order enjoining Defendants.

_____
KEVIN O'SULLIVAN

Leila Rachele Pittaway
Notary Public - State of New York
Qualified in Kings County
Reg. #02PI6154921
Commission Expires: 10/23/2010

Duly sworn to before me this
14 day of August 2007

NYK 1115578-1.079158.0011