ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X

TIME SQUARE CONSTRUCTION, INC.,   :

         Plaintiff,     :

   -against-       :

MASON TENDERS DISTRICT COUNCIL OF  :
GREATER NEW YORK & LONG ISLAND
AND CONSTRUCTION GENERAL     :
LABORERS JATC, LOCAL UNION NO. 79,

        Defendant.    :

------------------------------------------ X

07 CIV. 7250 (SAS) (AJP)


**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

## PRELIMINARY STATEMENT

Time Square Construction, Inc. ("Time Square" or "Plaintiff"), by and through its attorneys, McDermott Will and Emery LLP, submits this memorandum of law and the accompanying Affidavit of Kevin O'Sullivan ("O'Sullivan Aff."), sworn to August 13, 2007 and the Affidavit of Fergal Conefrey ("Conefrey Aff."), sworn to August 13, 2007, in support of its application pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction to enjoin Defendants Mason Tenders District Counsel of Greater New York & Long Island ("MTDC") and Construction General Laborers JATC, Local Union No. 79 ("Local 79") (collectively "Defendants") from pursuing claims against Time Square in any arbitration under the in multi-employer collective bargaining agreement between MTDC and the Building Contractors Association (the "BCA").

## STATEMENT OF FACTS

Time Square is a New York City commercial real estate developer and construction management company. (O'Sullivan Aff. ¶ 3; Conefrey Aff. ¶ 2.) Kevin and Donal O'Sullivan own Time Square. (O'Sullivan Aff. ¶ 3.) Kevin O'Sullivan is Time Square's CEO and is responsible for the company's day-to-day operations. (Id. ¶ 4.) Donal O'Sullivan is not involved in the day-to-day operations of Time Square. (Id. ¶ 7.) Time Square's employees are non-union management level employees. (Id. ¶ 35.) The company contracts with both union and non-union subcontractors to do construction on projects it develops. (O'Sullivan Aff. ¶ 6; Conefrey Aff. ¶ 5.)

Navillus is a contractor that specializes in foundation and superstructure concrete, high end masonry, tiling and stone. (O'Sullivan Aff. ¶ 7; Conefrey Aff. ¶ 6.) Navillus works as a sub-contractor on construction projects, and has only served as general contractor on limited public renovation projects. Navillus has never been a general contractor on any private projects

involving new construction. (O'Sullivan Aff. ¶ 38.) Donal and Kevin O'Sullivan own Navillus. Donal O'Sullivan is the CEO of Navillus and is responsible for the company's day-to-day operations. Kevin O'Sullivan is not involved in the day-to-day operations of Navillus. (Id. ¶ 7.)

Time Square and Navillus are separate legal entities that operate wholly independently. (O'Sullivan Aff. ¶ 31.) Time Square and Navillus have separate offices, leases, financial records, payroll accounts, bank accounts and insurance policies. (Id. ¶ 32.) Navillus' officers have no control over the daily operations or finances of Time Square, and vice versa. (Id. ¶ 33.) There is no overlap between the employees of Time Square and the employees of Navillus. Each company is solely responsible for hiring, firing and supervising its employees. (O'Sullivan ¶ 34; Conefery ¶ 18.)

Time Square and Navillus have different business purposes. (Id. ¶ 36.) Time Square is a commercial real estate developer that may also serve as a construction manager on construction projects in the private sector. (Id. ¶ 37.) Navillus specializes in foundation and superstructure concrete, masonry, tile, and stone laying and is generally a sub-contractor on projects. Navillus only operates as a general contractor in the construction industry on publicly owned buildings. In other words, Time Square's client is the owner of the site, while Navillus' client is the general contractor. Therefore, even if Time Square and Navillus work on the same project, they serve distinct functions and answer to different clients. (Id. ¶¶ 38 & 39.)

Navillus is a member of the BCA. (O'Sullivan Aff. ¶ 8; Conefrey Aff. ¶ 7.) The BCA is party to a collective bargaining agreement with MTDC (the "CBA"). (Id.) MTDC is an association of various labor organizations, and their members, in the New York City area. (O'Sullivan Aff. ¶ 8.) Local 79 is a constituent member of the MTDC. (O'Sullivan Aff. ¶ 8; Conefrey Aff. ¶ 7.) The CBA sets forth the terms and condition under which BCA constituents

employ members of the local unions that are constituents of the MTDC. (O'Sullivan Aff. ¶ 9.)

Time Square is not a signatory to any collective bargaining agreement with MTDC or Local 79.

(O'Sullivan Aff. ¶ 10; Conefrey Aff. ¶ 7.) Moreover, Time Square is not, and has never been, a

constituent of the BCA. (O'Sullivan Aff. ¶ 10.)

### The Project and Local 79's Complaints

Time Square is currently the construction manager on a construction project located at

785 Eighth Avenue, New York, New York (the "Project"), which it is also developing.

(O'Sullivan Aff. ¶ 5.) The Project involves the construction of a 43-story concrete-framed

building. (O'Sullivan Aff. ¶ 5; Conefrey Aff. ¶ 5.) Time Square has engaged both union and

non-union sub-contractors to complete the construction of the building. (O'Sullivan Aff. ¶ 6;

Conefrey Aff. ¶ 5.) Time Square and Navillus entered into an arms length agreement under

which Time Square sub-contracted the concrete masonry work on the Project to Navillus.

(O'Sullivan Aff. ¶ 6.)

Time Square hired a student on summer vacation, Fergal Cronan, to perform clean up

tasks such as sweeping and removing debris and garbage from the Project site during his summer

vacation. (O'Sullivan Aff. ¶ 11; Conefrey Aff. ¶ 8.) Soon thereafter, a representative of Local

79 approached Navillus and asked it to put a Local 79 laborer on the Project to do the same tasks

as Mr. Cronan. (O'Sullivan Aff. ¶ 12; Conefrey Aff. ¶ 8.) The Navillus representative advised

Local 79 that Navillus was a sub-contractor on the project and was not involved in hiring

laborers. Navillus referred the matter to Time Square. (Conefrey Aff. ¶ 8.)

Local 79 then approached Time Square directly and demanded it to "put some laborers on

the job." As a courtesy and in effort to avoid a labor dispute, Time Square agreed to hire a

Local 79 laborer to perform general clean up tasks at the Project site. (O'Sullivan Aff. ¶ 13;

Conefrey Aff. ¶ 9.) However, Time Square advised Local 79 that they wanted a laborer who

held a safety manager's license and could serve as site safety supervisor in case the regular site safety supervisor was out. (O'Sullivan Aff. ¶ 14; Conefrey Aff. ¶ 9.) Local 79 agreed, and on June 4, 2007, Nicholas Albanese ("Mr. Albanese"), a Local 79 laborer, was hired by Time Square. Mr. Albanese reported to Time Square directly at all times. (O'Sullivan Aff. ¶ 15; Conefrey Aff. ¶ 9.)

Because it is not a party to any collective bargaining agreements, Time Square uses a "paymaster system" when it hires a union employee in order to ensure that all Union fringe benefit contributions can be made on behalf of the employee. (O'Sullivan Aff. ¶ 16; Conefrey Aff. ¶ 10.) Here, with the consent and knowledge of Local 79, Time Square engaged Navillus, a party to the CBA, to serve as paymaster for Mr. Albanese. (O'Sullivan Aff. ¶ 17; Conefrey Aff. ¶ 10.) The paymaster issues payroll checks and makes appropriate contributions to the union's benefit funds or dues. (O'Sullivan Aff. ¶ 16; Conefrey Aff. ¶ 10.) Navillus did not supervise or otherwise have any employment interest in Mr. Albanese. (O'Sullivan Aff. ¶ 18; Conefrey Aff. ¶ 10.) The "paymaster system" is a common practice in the construction industry. (O'Sullivan Aff. ¶ 16; Conefrey Aff. ¶ 10.)

Once on the Project, Mr. Albanese did not report to work as scheduled, refused to complete the assigned tasks for which he was hired, demanded pay for days he did not work and threatened to have the Project shut down if he was not paid more money. Time Square advised Local 79 of its dissatisfaction with Mr. Albanese as an employee and asked that he be removed from the Project and replaced by another Local 79 member. Local 79 refused to replace Mr. Albanese. (O'Sullivan Aff. ¶ 19; Conefrey Aff. ¶ 11.)

During that same time frame, Navillus advised Time Square that it could no longer serve as paymaster for Mr. Albanese. (O'Sullivan Aff. ¶ 20; Conefrey Aff. ¶ 12.) Time Square then

arranged for Par Wrecking, another contractor with a contract with Local 79, to replace Navillus and serve as paymaster for Mr. Albanese. On Friday June 15th, Mr. Albanese refused to accept his paycheck from Par Wrecking. He was advised that his refusal to accept the check meant he could no longer be on-site. Thereafter, Mr. Albanese did not enter the site and repeatedly refused to accept his paycheck. On or about June 15, 2007, Mr. Albanese voluntarily terminated his employment with Time Square. (O'Sullivan Aff. ¶ 22; Conefrey Aff. ¶ 13.)

Thereafter, Local 79 began picketing Time Square outside of the Project site, protesting the circumstances of Mr. Albanese's employment and termination. Some union sub-contractors' employees refused to cross the picket line, including employees of Navillus. (O'Sullivan Aff. ¶ 23; Conefrey Aff. ¶ 14.) On or about June 26, 2007, Time Square terminated the sub-contracts of Navillus' and others because they could not perform during Local 79's picketing. (O'Sullivan Aff. ¶ 24; Conefrey Aff. ¶ 15.) Time Square reinstated its sub-contract with Navillus on or about July 5, after Time Square reached a settlement agreement with Local 79 regarding Mr. Albanese's employment. The settlement included hiring another Local 79 laborer to work on the Project with another Local 79 contractor acting as "paymaster." (O'Sullivan Aff. ¶ 25; Conefrey Aff. ¶ 16.)

On or about July 13, 2007, MTDC sent a letter to both Navillus and Time Square noticing its intention to arbitrate complaints against Navillus and Time Square relating to the Project, under Step 3 of the CBA ("Demands"). (O'Sullivan Aff. ¶ 26, Ex. A; Conefrey Aff. ¶ 17.) In that letter, MTDC stated that it intends to hold Time Square liable for violations under the CBA, relating to the employment and termination of Mr. Albanese, as a joint employer, single employer and/or alter ego of Navillus. Specifically, Local 79 seeks to arbitrate whether Time Square: (i) did not offer Mr. Albanese overtime employment; (ii) did not provide Mr. Albanese

timely payment for time worked and owes him waiting time – $100.00 a day – for all time lapsed since the unpaid amounts were due; (iii) violated the CBA by terminating Mr. Albanese; and (iv) violated the CBA by hiring non-union laborers. (O'Sullivan Aff. Ex. A.)

On or about July 18, 2007, counsel for Time Square responded to Defendants' Demands, specifically stating that Time Square is a separate entity from Navillus and not a party to the CBA, thus, Time Square is not under any obligation to engage in the demanded arbitration. Time Square also requested clarification concerning the basis for Defendants' Demands. Defendants refused to provide such clarification. (O'Sullivan Aff. ¶ 27, Ex. B.) The next day, Time Square sent another letter to Defendants, again opposing their claims that Time Square was subject to the CBA and obligated to arbitrate Defendants' complaints against it. Time Square also indicated that without a proper basis to obligate it to arbitrate, it would not participate in any such arbitration. (O'Sullivan Aff. ¶ 28, Ex. C.)

On August 1, 2007, Defendants unilaterally sent a letter to Roger Maher ("Mr. Maher"), designating him as the arbitrator in its dispute with Time Square and Navillus and requesting Mr. Maher to contact the parties to schedule an arbitration on the issues raised by Defendants. Presently, arbitration has not been scheduled. (O'Sullivan Aff. ¶ 29, Ex. D.) However, Defendants have stated that they intend to proceed against Time Square even if the company does not defend itself in the arbitration.

## ARGUMENT

It is well settled that in order to obtain preliminary injunctive relief, the movant must show (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999);

<u>Reuters Ltd. v. United Press Int'l, Inc.</u>, 903 F.2d 904, 907 (2d Cir. 1990); <u>Mount Ararat Cemetery v. Cemetery Workers & Greens Attendants Union</u>, 975 F. Supp. 445, 446 (E.D.N.Y. 1997). Here, Time Square meets this burden. First, Time Square is likely to succeed on the merits of its claim for an injunction prohibiting Defendants from proceeding in its attempt to arbitrate claims against Time Square. Time Square is not a party to the CBA, and thus cannot be bound by its arbitration clause. Contrary to Defendant's assertions in the Demand, Time Square cannot be forced to arbitrate based on mere allegations that it is an alter-ego of or "joint" or "single" employer with Navillus. Second, Time Square will be irreparably harmed if it is forced to expend time and monies defending itself in an arbitration where it has not agreed to arbitrate disputes with Defendants. Finally, Defendants will suffer no harm whatsoever if an injunction issues because they do not have the right to arbitrate with Time Square in the first place.

**I.     TIME SQUARE IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT IT CANNOT BE FORCED TO ARBITRATE**

The Demand asserts that the Defendants have a dispute with Navillus and Time Square under the CBA relating to Mr. Albanese's employment. Putting aside the fact that those claims are meritless, Defendants have no basis upon which to drag Time Square into the arbitration. Simply put, Time Square is not a party to the CBA and cannot be bound by its arbitration clause. <u>See, e.g.</u>, <u>Merrill Lynch Inv. Managers v. Optibase, Ltd.</u>, 337 F.3d 125, 131 (2d Cir. 2003).

Defendants hope to avoid this simple fact by asserting that Time Square can be hauled into arbitration because of its common ownership with Navillus. To that end, in the Demand, Defendants make the conclusory and unfounded statements that Time Square is the alter-ego of Navillus, or that the companies are single or joint employers. However, Times Square cannot be compelled to arbitrate unless and until a court, not the arbitrator, finds that the companies are alter-egos or single or joint employer. The Defendants cannot make such a showing because

Time Square and Navillus are separate legal entities that operate at arms length and do not entwine responsibility for the hiring, firing or supervision of employees. As such, this Court should enjoin Defendants from pursuing claims against Time Square in any arbitration brought under the CBA.

### A.    Time Square Is Not Bound By the CBA's Arbitration Clause

Time Square is not a party to the CBA and, thus, cannot be compelled to arbitrate with the Defendants. It is well settled that "[a]rbitration is a matter of contract; so 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Merrill Lynch, 337 F.3d at 131 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 547, 582 (1960); see also Local Union No. 38 v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004) (same); Masefield AG v. Colonial Oil Indus., Inc., 05 Civ. 2231 (PKL), 2005 U.S. Dist. LEXIS 6737, at *8 (Apr. 18, 2005) (injunction grated where defendant attempted to compel non-signatory plaintiff to arbitrate); Veera v. Janssen, 05 Civ. 2145 (SHS), 2005 U.S. Dist. LEXIS 13671, at *8 (July 5, 2005) ("the Court cannot compel a party to arbitrate unless that party previously agreed to arbitrate"). Further, as the Second Circuit explained in Rochdale Village, Inc. v. Pub. Serv. Employees Union, there is no general duty to submit labor disputes to arbitration. 605 F.2d 1290, 1294 (2d Cir. 1979).

The simple fact that Time Square did not agree to arbitrate under the CBA is dispositive of this motion. It never signed the CBA. It is not a member of the BCA, which is party to the CBA. In fact, Time Square has never entered into any CBA with any Union, let alone Defendants. Time Square made a decision not to obligate itself to arbitrate under any CBA, and this Court should not force Time Square to do so merely because Defendants have filed a baseless Demand.

**B.     Local 79 Cannot Bind Time Square to the CBA by Simply Stating
        that it is the "Alter Ego" of or "Single" or "Joint" Employer With Navillus**

Defendants are trying to haul Time Square into an arbitration (that Time Square never agreed to) by making conclusory statements in the Demand that Time Square is the alter-ego of or "joint" or "single" employer with Navillus. "The case law is clear, however, that 'unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court . . . .'" Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)(citations omitted); see also AT&T Tech., Inc. v. Commc'ns. Workers of Am., 475 U.S. 643 (1986) ("It was the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration."); Local Union No. 38 v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004) (court must decide if non-party bound to CBA as an alter-ego of the signatory); Carpenters 46 v. ZCON Builders, 96 F.3d 410, 414 (9th Cir. 1996) ("arbitrability, under most circumstances, must be resolved by the court").   For the reasons detailed below, there is no genuine dispute that Time Square and Navillus are separate and distinct enterprises, and Time Square cannot be hauled into the arbitration merely because Navillus has agreed to arbitrate under the CBA.

**1.     Time Square is Not the Alter-Ego of or Single Employer with Navillus**

Time Square is not the alter-ego of Navillus, nor are the companies single employers. Rather, Time Square it is a distinct corporate entity that operates wholly independently of Navillus.   In analyzing whether one corporation is the alter-ego of another, Courts look at whether they share "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." See First Class Maint. Serv., Inc., 289 NLRB 484, 484 (1988); see also Int'l Longshoremen's Ass'n, 310 NLRB 1, 4 (1993) (finding lack of financial control and distinct business purpose fatal to alter-ego finding); Victor Valley Heating & Air

Conditioning, 267 NLRB 1292, 1297 (1983) (independently operating company not an alter ego). Similarly, a court may find that two companies are single employers based on: (1) the interrelationship of operations; (2) common management; (3) centralized control over labor relations; and (4) common ownership or financial control of the companies. Canned Foods, Inc., 332 NLRB 1449, 1449 (2000) (affirming ALJ's finding that no single employer relationship existed). Under this analysis, "'[c]ommon control *must be* actual or active, as distinguished from potential control.'" Canned Foods, 332 NLRB at 1450 (quoting Western Union Corp., 224 NLRB 274, 276 (1976))(emphasis added).

### a.    The Companies Operate Separately

The facts show that Time Square and Navillus are not alter-egos or a single employer. Time Square and Navillus have separate employees and management. The companies have separate offices, leases, financial records, payroll accounts, bank accounts and insurance policies. Navillus' officers exercise no control over the daily operations or finances of Time Square, and vice versa. They also have different business purposes – Time Square is a development firm that serves as construction manager on projects it develops in the private sector, while Navillus is a specialized masonry, tiling and stone company that serves as sub-contractor. To the degree that Navillus serves as a general contractor, it does so only on public projects involving renovation of existing buildings. Time Square does not do this sort of work, and in fact does not work in the public sector. Even if Time Square and Navillus work on the same project, they serve distinct functions and answer to different clients. The fact that Time Square terminated Navillus' sub-contract on the Project when Navillus failed to perform shows that the companies operate at arms length.

In spite of these facts, Defendants have persisted in asserting in letters, phone calls, and meetings that Time Square and Navillus are alter-egos or a single employer because they are

owned by the same two men – Kevin and Donal O'Sullivan. However, the fact that two corporations share common owners does not, without more, support a finding that they are alter-egos. While Kevin and Donal O'Sullivan own both companies, Kevin O'Sullivan is responsible for the operation of Time Square. The day-to-day operations of Navillus are the responsibility of Donal O'Sullivan. The analysis doesn't change merely because the co-owners are also family. See Reigel Elec. & Cent. Elec. Servs., 341 NLRB 198, 202 (2004) (finding that familial relationship is insufficient to establish alter ego); Adanac Coal Co., Inc., 293 NLRB 290, 290 (1989) (holding that two companies could not be deemed alter-egos merely because common family members held ownership in both companies).

### b.    There is No Centralized Control of Labor Relations

The most important factor in the single employer analysis is whether the companies have centralized control of labor relations. The lack of evidence that two companies employ workers "interchangeably" or share common management affecting labor relations "strongly suggests" they are not a single employer. See Canned Foods, 332 NLRB at 1449; ICC Air Servs. Corp., 316 NLRB 395, 401 (1995) (two companies not a single employer where labor policies decided by different bodies); Richmond Convalescent Hosp., 313 NLRB 1247, 1250 (1994) (two companies not single employer because no common control over day-to-day operations or labor relations). Here, Time Square and Navillus have no employees in common. Both companies have the sole right to hire, fire, discipline and manage their respective employees. Time Square hires non-union employees while Navillus hires union members pursuant to certain CBAs.

### 2.    Time Square and Navillus are Not Joint Employers

Companies are joint employers when they "share or codetermine those matters governing the essential terms and conditions of employment." H&W Motor Express, Inc., 271 NLRB 466, 467 (1984)(citations omitted). In order to find that two companies are joint employers, a court

must be satisfied that one company possesses "sufficient indicia of control" over another company's employees. Id. at 467-68 (no indicia of control where one company's employees worked in the facility of another company that did not "meaningfully affect" those employees' relationship with their employer). As the NLRB has clarified:

> "In sum, the issue to be resolved . . . is whether [one company] exercises or has the right to exercise sufficient control over the labor relations policies of [another company] or over the wages, hours and working conditions of the [other company's] employees from which it may be reasonably inferred that the [company] is in fact an employer of the [other company's] employees."

Bonita Nurseries, Inc., 326 NLRB 1164, 1167 (1998) (citing S. Cal. Gas Co., 302 NLRB 456 (1991)); see also TLI, Inc., 271 NLRB 798, 799 (1984) (no joint employers where there was no evidence that one company affected the terms and conditions of employment of another company's employees).

Navillus has no control over Time Square's employees, and vice versa. Time Square independently determines its employees' wages, hours and working conditions. With respect to Mr. Albanese, Time Square alone determined his hours, paid his wages, and supervised his working conditions. Navillus had no involvement whatsoever except that it served as the bureaucratic conduit for Mr. Albanese's pay. It could not be reasonably inferred that Navillus employed Mr. Albanese, and any attempt by the Defendants to make such an inference would be disingenuous.

### 3. The Fact That Navillus Served as Paymaster for Mr. Albanese's Employment Does Not Change the Analysis

The only connection between the employees of Time Square and Navillus is that Navillus has, on one occasion, served as the "paymaster" for Time Square. However, the fact that Navillus served as paymaster for Time Square's employment of Mr. Albanese, without more, is beside the point. See Nw. Ohio Adm'rs, Inc. v. S.E.A. Builders Corp., 183 F. Supp. 2d 991, 994

(N.D. Ohio 2002) ("Their use of a 'common paymaster' . . . simply does not outweigh the substantial evidence that the two companies are distinct in what they do, how they do it, and who does it."); <u>Prospect Lefferts Garden Neighborhood Ass'n</u>, 269 NLRB 670, 673 (1984) (using one company as paymaster for union employees as a bureaucratic conduit does not support finding of centralized labor relations). Navillus had no employment rights with respect to Mr. Albanese – he was a Time Square employee and Time Square had the sole right to supervise, discipline or fire him.

In <u>Prospect Lefferts</u>, the NLRB held that the mere fact that one company served as paymaster for the other did not make the companies joint employers. <u>See</u> 269 NLRB at 673. In its holding, the NLRB emphasized that the paymaster merely acted as a bureaucratic conduit for paperwork and did not determine the pay practices of the employer or have any right to control, supervise, hire or fire the employee. <u>Id</u>. Here, Navillus' duties as paymaster were similarly nothing more than to perform bureaucratic functions to assure contributions were made to provide Mr. Albanese with his union benefits. Navillus had no control over the terms of Mr. Albanese's employment, did not supervise Mr. Albanese, and had no input into any decision to discipline Mr. Albanese. In short, Navillus did nothing more than take Time Square's money and use it to pay Mr. Albanese and provide his Union benefits out of Navillus' accounts.

## II.    TIME SQUARE WILL BE IRREPARABLY HARMED IF IT IS HALED INTO THE ARBITRATION

A party is presumed to suffer irreparable harm if it is forced to arbitrate a dispute when there is no valid arbitration agreement. <u>Merrill Lynch</u>, 337 F.3d at 129; <u>Masefield</u>, 2005 U.S. Dist. LEXIS at * 22 (irreparable harm found where plaintiff was not a signatory to the arbitration agreement); <u>Mount Ararat Cemetery</u>, 975 F. Supp at 447; <u>Tellium, Inc. v. Corning Inc.</u>, 03 Civ. 8487(NRB), 2004 U.S. Dist. LEXIS 11470, at *12 (S.D.N.Y. June 22, 2004) (compelling

arbitration of matter not properly subject to arbitration constitutes "per se irreparable harm"). Since there is no agreement between Time Square and Defendants, Time Square will suffer per-se irreparable harm if haled into the Arbitration.

That harm is imminent because Defendants have obstinately refused to withdraw the Demand as to Time Square regarding the Demand. In fact, Defendants have unilaterally appointed an arbitrator and stated that they will proceed against Time Square even if the company does not defend itself. Absent injunctive relief, Time Square will be forced to spend monies and resources defending itself in an Arbitration that it never agreed to, only to spend more money appealing any decision because it was not bound by the CBA's arbitration clause in the first place.

## III.    DEFENDANTS WILL NOT BE HARMED IF INJUNCTIVE RELIEF IS GRANTED

The balance of hardships tips decidedly in favor of Time Square. Simply put, Defendants cannot be harmed if an injunction issues because they do not have the right to arbitrate with Time Square in the first place. As the Court held in Masefield, "defendant should not be permitted to compel [a non-signatory] to arbitrate under the Contract without a clear basis in the law." 2005 U.S. Dist. LEXIS at *22. Defendants are entitled to proceed with their claims against Navillus in arbitration, and may also choose to proceed against Time Square in a court of law. As such, the balance of hardships tips decidedly in favor of Time Square and this Court should issue an injunction prohibiting Defendants from proceeding in arbitration against Time Square.

Dated: New York, New York.
      August 14, 2007

Respectfully submitted,

By: _____
    Joel E. Cohen (JEC 5312)

McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173-1922
212.547.5400

*Attorneys for Plaintiff*
*Time Square Construction, Inc.*

NYK 1115041-2.079158.0011