UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
                                       :
Time Square Construction, Inc.,        :
                                       :
                    Plaintiff,         :
                                       :
         -against-                          07 CIV. 7250 ( SAS)
                                       :
MASON TENDERS DISTRICT COUNCIL         :
OF GREATER NEW YORK & LONG             :
ISLAND and Construction General Laborers :
JATC, LOCAL UNION No. 79,              :
                                       :
                    Defendants.        :
                                       :
------------------------------------ X


### TIME SQUARE CONSTRUCTION INC.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR AN INJUNCTION


**McDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

*Attorneys for Plaintiff*

*Of Counsel:*
Joel E. Cohen
Leila Pittaway

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ........................................................................................................ 10

    A.    Time Square is Not the Alter-Ego of Navillus................................... 11

         1.    Time Square has a Different Business Purpose Serving Different Customers  than Navillus and was Not Created to Avoid Navillus' Union Obligations................................................................................. 12

         2.    While Time Square and Navillus are Owned by Kevin and Donal They Are Managed Separately.............................................................. 14

         3.    Time Square and Navillus Operate Separately ........................................ 15

    B.    Time Square is Not a Single Employer with Navillus......................... 17

         1.    There is No Centralized Control of Labor Relations............................... 18

         2.    Time Square's and Navillus' Employees Are Not a Single Bargaining Unit................................................................................. 19

    C.    Time Square and Navillus are Not Joint Employers............................. 20

CONCLUSION.................................................................................................... 22

NYK 1132106-3.079158.0011

# TABLE OF AUTHORITIES

## CASES

America Fuel Corp. v. Utah Energy Development Co., 122 F.3d 130 (2d Cir. 1997) ...............................................................................................17

Bonita Nurseries, Inc., 326 N.L.R.B. 1164 (1998) ...........................................21

Canned Foods, Inc., 332 N.L.R.B. 1449 (2000) ..........................................18, 19

Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc, 690 F.2d 489 (5th Cir. 1982) .......................................................................................................12

Chauffeurs, Teamsters & Helpers Local Union No. 776, 313 N.L.R.B. 1148 (1994) ................................................................................................18, 19

First Class Maintenance Serv., Inc., 289 N.L.R.B. 484 (1988) .........................12

H&W Motor Express, Inc., 271 N.L.R.B. 466 (1984).................................20, 21

Hill Industrial, 320 N.L.R.B. 1116 (1996).......................................................16

Horizon Plastics, Inc. v. Constance, No. 00 Civ. 6458, 2004 U.S. Dist. LEXIS 10051 (S.D.N.Y. May 28, 2004)..............................................................17

ICC Air Services Corp., 316 N.L.R.B. 395 (1995)............................................19

In the matter of Armen Digital Graphics, Ltd., 96 Civ. 5844, 1997 U.S. Dist. LEXIS 11938 (S.D.N.Y. Aug. 8, 1997)................................................13, 17

International Longshoremen's Association, 310 N.L.R.B. 1 (1993)...................12

L&J Equip. Co., 274 N.L.R.B. 20 (1985)............................................16, 17, 18

Lihli Fashions Corp. v. NLRB, 80 F.3d 743 (2d Cir. 1996)...................12, 14, 20

Marino Electric, Inc., 285 N.L.R.B. 344 (1987)...............11, 13, 14, 15, 16, 17

NLRB v. Don Burgess Construction Corp., 596 F.2d 378 (9th Cir. 1979) .......18

Nw. Ohio Adm'rs, Inc. v. S.E.A. Builders Corp., 183 F. Supp. 2d 991 (N.D. Ohio 2002) .......................................................................................................21

Pacific Southwest Airlines v. NLRB, 587 F.2d 1032 (9th Cir. 1978) ...............20

Pioneer Holding Co., 291 N.L.R.B. 1047 (1988) ..........................................................11, 16

Prospect Lefferts Garden Neighborhood Association, 269 N.L.R.B. 670 (1984) .......21, 22

Richmond Convalescent Hospital, 313 N.L.R.B. 1247 (1994) ...........................................19

S. Cal. Gas Co., 302 N.L.R.B. 456 (1991)........................................................................21

TLI, Inc., 271 N.L.R.B. 798 (1984)..................................................................................21

U.S. Reinforcing, Inc., Case 3-CA-25314, 2007 NLRB LEXIS 291 (Jul. 31,
    2007) ...........................................................................................................................17

Victor Valley Heating & Air Conditioning, 267 N.L.R.B. 1292 (1983) ...........................12

Time Square Construction, Inc. ("Time Square" or "Plaintiff"), by and through its attorneys, McDermott Will and Emery LLP, submits this memorandum of law, in further support of its application pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for an injunction to enjoin Defendants Mason Tenders District Counsel of Greater New York & Long Island ("MTDC") and Construction General Laborers JATC, Local Union No. 79 ("Local 79") (collectively "Unions" or "Defendants") from pursuing claims against Time Square in any arbitration under the multi-employer collective bargaining agreement between MTDC and the Building Contractors Association (the "BCA").

This memorandum of law is limited to the issue of whether Time Square is the alter-ego of or joint or single employer with Navillus Tile, Inc. ("Navillus"). For a discussion of the reasons why Time Square will suffer irreparable harm absent injunctive relief, as well as the balance of the hardships, we respectfully refer the Court to the Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction dated August 15, 2007.

## PRELIMINARY STATEMENT

This case was effectively summed up by the Union's Rule 30(b)(6) representative during his deposition. When asked if there came a point in time when he believed that Navillus and Time Square were the same company, Mr. Cangelosi responded "[a]t the very beginning of the job, I thought that." (Cangelosi Tr.[1] at 38:22 to 39:4). Mr. Cangelosi went on to admit that the dispute to be arbitrated had nothing to do with Time Square because it and Navillus were not the same company. (Id. at 48:25 to 49:15). It appears that Mr. Cangelosi understands what others at the Union will not accept – namely, that while Navillus provided some assistance to Time Square

---

[1] "Cangelosi Tr." refers to the transcript of the deposition of Joseph Cangelosi taken on October 18, 2007, attached as Exhibit A to the Declaration of Joel E. Cohen dated November 19, 2007 ("Cohen Dec.").

at the time of its formation, Time Square and Navillus now operate as separate entities engaged in limited arms-length transactions and in different businesses. As such, the Unions cannot show that Time Square is the alter-ego of or a joint or single employer with Navillus.

## STATEMENT OF FACTS

### The Relationship Between Construction Managers and Sub-Contractors

The construction industry is made up largely of construction mangers and specialized companies that work as sub-contractors. The construction managers are responsible for overseeing a project as a whole and are in charge of the construction site. Construction managers sub-contract out the actual construction work to specialized firms, or sub-contractors. The sub-contractors do not have responsibility for the whole site, but rather limits their efforts to performing a facet of the construction. These sub-contractors answer to the construction manager. (Id. at 5:10 to 6:19).

### Donal and Kevin O'Sullivan's Business

In the late 1980s, Donal O'Sullivan ("Donal") formed Navillus Tile, Inc. ("Navillus"), a concrete, masonry, stone and tile company. (D. O'Sullivan Tr.[2] at 4:16 to 5:6). Donal's brother Kevin O'Sullivan ("Kevin") became 50% owner in and Vice President of Navillus in 1999. (K. O'Sullivan Tr. at 5:12-22; Cohen Dec. Ex. G). The core of Navillus's business consists of serving as a sub-contractor on large scale construction projects. Navillus has only served as a general contractor on a handful of public renovation projects where existing small buildings such as libraries or museums are being renovated. (D. O'Sullivan Tr. at 22:8-20).

---

[2] "D. O'Sullivan Tr." refers to the transcript of the deposition of Donal O'Sullivan taken October 18, 2007, attached as Exhibit B to the Cohen Declaration.

Navillus is a unionized company and member of the BCA. As such, Navillus is bound by the terms of the CBA in employing union tradesmen, including Laborers represented by Local 79. Navillus employs a substantial number of Local 79 members. (Cangelosi Tr. at 40:8-10).

In or around 2005, Donal and Kevin decided to enter into the business of owning and developing properties. The brothers planned that Kevin would take over this new business once it was off of the ground. (Id. at 9:13–19). Donal and Kevin started looking at specific projects with the assistance of Tony DelGreco, a Navillus employee who had relevant experience and was interested in transitioning to the new business. (K. O'Sullivan Tr. [3] at 43:6-19). All of the potential financers knew, however, that Navillus was not going to be the construction manager on any projects, but rather a new company would be created. (K. O'Sullivan Tr. at 98:10-15).

In the Fall of 2005, Kevin and Donal decided to develop a property on 8th Avenue in Manhattan (the "8th Avenue Project") with a group of unrelated investors (the "Partners"). (D. O'Sullivan Tr. at 15:12-16). The project is the construction of a high-rise condominium. Kevin, Donal and the Partners divided responsibility so that Kevin and Donal (in name) were responsible for managing the construction while the Partners would take charge of scheduling, financing, etc. (D. O'Sullivan Tr. at 25:5-13).

**The Foundation of Time Square**

Once the 8th Avenue Project got off of the ground in February of 2006, Kevin incorporated Time Square, a Delaware company to run this and other construction projects. (Cohen Dec., Ex. D). Kevin and Donal each own 50% of Time Square. (K. O'Sullivan Dec. at 4:17-24). Kevin became the President of Time Square, while Donal took no position in the new

---

[3] "K. O'Sullivan Tr." refers to the transcript of the deposition of Kevin O'Sullivan taken October 26, 2007, attached as Exhibit C to the Cohen Declaration.

- 3 -

company. (Cohen Dec., Ex. D at 3; K. O'Sullivan at 5:18-23). He exercised his authority as owner on one occasion, when he signed the construction management agreements between Time Square and the Partners at Kevin's request when Kevin was out of town. (D. O'Sullivan Tr. at 47:7-21; Cohen Dec., Ex. E). With that limited exception, Donal distanced himself from the construction management side of the business and let Kevin run the operation.

During the Spring of 2006, Mr. DelGreco, Fergal Coneferey and Kevin all went on the Time Square payroll. A few other Navillus employees would move to Time Square during the next year. Over the course of the next several months, Time Square worked to progress the 8th Avenue project while establishing the company.

At first, Time Square operated out of Navillus' offices, paying rent for use of the office-space and computer server[4]. (Cohen Dec., Ex. F at 1-8). However, Kevin found office space in Manhattan in the fall of 2006 after several near-misses. (Id. at 10-12). Time Square also hired additional personnel to work on the 8th Avenue Project and an upcoming 34th Street Project which is also the development of a high-rise condominium. It also obtained separate insurance policies and bank accounts, and set up separate financial records. Finally, in September of 2006, Kevin formally resigned his position as Vice President of Navillus. (Cohen Dec., Ex. G).

There has been virtually no day to day commonality between Time Square and Navillus since early in the fall of 2006. Donal is not involved in any day-to-day decision making at Time Square. Donal's only involvement in Time Square consists of occasionally accompanying Kevin on trips to view potential new project sites, although Kevin is ultimately responsible for making the decision as to whether to proceed with a new project. (K. O'Sullivan Tr. at 38:5-19). Donal

---

[4] At first, documents printed out from the Navillus computers automatically printed Navillius' name on Time Square's work product. (K. O'Sullivan Tr. at 98:16-23).

- 4 -

does not draw a salary from Time Square but may receive profit disbursements if the company becomes profitable. (K. O'Sullivan Tr. at 4:25 to 5:6).

Kevin, for his part, no longer has involvement in the day-to-day operations of Navillus. There is no overlap between the employees of Time Square and the employees of Navillus and each company is solely responsible for hiring, firing and supervising its employees. Kevin's only contact with Navillus is that he is the president of a company that has sub-contracted work to Navillus (as many other construction management companies have over the past 20 years) and that he received profit disbursements as a part-owner of Navillus. (Id. at 5:14-17).

Most importantly, Navillus and Time Square operate in distinct segments of the construction industry. Navillus is a concrete and tile sub-contractor that has never operated as a construction management company and has only been a general contractor on small public renovation projects. Time Square, in contrast, is a commercial real estate developer and construction management company with only management level employees, no different from other construction management companies, such as Tishmann-Speyer. Time Square does not itself perform any construction work. (Cangelosi Tr. at 5:10 to 6:4). Even if Time Square and Navillus work on the same project, they serve distinct functions and answer to different clients. In fact, Time Square is Navillus' client on both the 8th Avenue and 34th Street Projects.

**The 8th Avenue Project Sub-Contracts**

Time Square is not a unionized company and is not a signatory to any collective bargaining agreement with any union. However, Time Square did not want to shut the unions out of its projects. To that end, Time Square sub-contracted the 8th Avenue Project to both union and non-union companies. Donal had no say in selecting the sub-contractors on the 8th Avenue Project, and is not sure who the sub-contractors are. (K. O'Sullivan Tr. at 43:20-23).

- 5 -

The first 8th Avenue sub-contract Time Square entered into was with A. Russo, a unionized demolition sub-contractor, which began work in the summer of 2006. (Cangelosi Tr. at 16:5-18).

A few months later, Time Square sub-contracted the foundation and superstructure concrete work to Navillus. (Cohen Dec., Ex. H). Time Square sub-contracted this work to Navillus because the project drawings were incomplete, which meant that no comparable company would give a firm bid on the project because there was no way to estimate costs. (K. O'Sullivan Tr. at 44:23 to 45:20). In addition, the Partners asked Kevin to sub-contract that portion of the work to Navillus because they believed that Navillus (whose individual owners also were part-owners of the property) could be trusted to proceed in good faith. (Id. at 50:2-24). Navillus, for its part, was willing to take on the project on a cost-plus basis because the company had just begun to perform concrete superstructure work and needed more sub-contracts to further its reputation in the area.[5] (Id. at 51:2-9).

As to the future, however, Time Square agreed not to sub-contract work to an affiliated entity absent prior consent of the owners. (Cohen Dec., Ex. E at 6). Further, Time Square is currently the construction manager on another project on 34th Street in Manhattan (the "34th St. Project"). There, Navillus obtained the foundation and superstructure concrete sub-contract only after the project was competitively bid. Those contracts are not on a cost-plus basis. (Cohen Dec., Ex. I).

**Local 79 Demands that Time Square Hire a Union Laborer**

Navillus completed the foundation work and began to work on the concrete superstructure at the 8th Avenue Project during the Spring of 2007. While Navillus was working

---

[5] While cost-plus contracts are rare, Navillus has previously done work on a cost-plus basis for companies that are not related.

- 6 -

on the foundation and superstructure concrete, there were no laborers (Local 79 or otherwise) on the site because that trade generally does not have work with the concrete sub-contractor. (D. O'Sullivan Tr. at 65:14-25). Kevin did, however, hire Fergal Cronin, the son of a family friend who was on summer vacation from school, to perform small clean-up tasks and generally function as a "gopher" for Time Square's Project Superintendent Liam Kelley. (K. O'Sullivan Tr. at 58:7-21).

Since Navillus was doing the vast majority of the work at these initial stages, it agreed to provide the site safety supervisor, a position required under the law. Navillus hired Wayne Murphy, a Local 79 member, as site safety supervisor. (D. O'Sullivan at 36:2-23). As the project progressed, it fell to Time Square as the construction manager to provide a site safety supervisor. Time Square, however, had a difficult time finding qualified site safety supervisors, so it hired Wayne Murphy away from Navillus. (K. O'Sullivan Tr. at 66:15-24).

Around that time, Local 79 directed its attention to the 8th Avenue Project. Joseph Cangelosi, a Local 79 organizer, began "frequenting" the 8th Avenue Project in April of 2007. (Cangelosi Tr. at 16:3 to 17:3). On site, he spoke with Wayne Murphy about the possibility of getting a Local 79 Laborer on the "job." Mr. Murphy referred Mr. Cangelosi to Mr. Coneferey of Time Square. (Id. at 17:4 to 18:7). Thereafter, Local 79 members began to repeatedly call Navillus employees who had no role in Time Square's hiring decisions. Many of those calls went to Gabriel McCauley, who repeatedly advised Local 79 that Navillus had no authority to make any hiring decisions for Time Square and told the Union to speak with Time Square directly. (K. O'Sullivan at 63:2-24).

Finally, in late May, in light of Local 79's phone calls to Time Square's managers, Kevin agreed to hire a Local 79 Laborer in a good faith attempt to avoid labor problems with Local 79.

(K. O'Sullivan at 64:14 to 65:14). By that time, the Union knew that Time Square and Navillus were separate companies. (Cangelosi Tr. at 48:25 to 49:15; Cohen Dec., Ex. J at 1).

At Local 79's request, Time Square asked Navillus to serve as the "paymaster" for the Local 79 Laborer. (D. O'Sullivan at 63:15-25). By way of background, when a company that is not a party to any collective bargaining agreements wishes to hire a union employee, the parties use a "paymaster system" in order to ensure that all Union fringe benefit contributions can be made on behalf of the employee. (Cangelosi Tr. at 8:21 to 9:25). The "paymaster" issues payroll checks and makes appropriate contributions to the union's benefit funds and bills those amounts back to the non-union company. (D. O'Sullivan Tr. at 75:11-23). The "paymaster" does not supervise or otherwise have any employment interest in the Union employee at issue and it does not matter to the Union what union company takes on the role of "paymaster". (Cangelosi Tr. at 25:6-23). The "paymaster system" is a common practice in the construction industry as a means of giving "union benefits" to employees of non-union companies. Indeed, in the past, Navillus has served as paymaster for Local 79 members working for non-union companies other than Time Square. (D. O'Sullivan Tr. at 62:9 to 63:4).

**The Dispute Regarding Mr. Albanese**

Nicholas Albanese ("Mr. Albanese"), Local 79's designated Laborer, reported to work at Time Square on or about June 4, 2007. Mr. Albanese was directed solely by Liam Kelly, also a Time Square employee. (Cangelosi Tr. at 29:22-25). From the outset, Mr. Albanese appeared to have no real interest in working on the site. Mr. Albanese did not report for work as scheduled, refused to complete the assigned tasks for which he was hired, demanded pay for days he did not work and threatened to have the 8th Avenue Project shut down if he was not paid more money.

Time Square advised Local 79 of Mr. Albanese's actions and asked that he be removed and replaced with another Local 79 Laborer. The Union refused to provide a new person at the site.

Shortly thereafter, Navillus advised Time Square that it no longer wished to serve as "paymaster" for Mr. Albanese. (K. O'Sullivan Tr. at 84:20-24). In order to assure that Mr. Albanese continued to receive union benefits, Time Square arranged for Par Wrecking, another sub-contractor with a contract with Local 79, to replace Navillus as "paymaster." (Id. at 84:25 to 85:17). On Friday June 15th, Mr. Albanese refused to accept his paycheck from Par Wrecking at the Union's direction. (Cangelosi Tr. at 30:7-25). Time Square then advised Mr. Albanese that he could not stay on-site if he was refusing his pay. In response, Mr. Albanese voluntarily terminated his employment with Time Square. Local 79 assigned Mr. Albanese to another job on July 22, 2007. (Cohen Dec., Ex. J at 4).

Thereafter, Local 79 began picketing Time Square outside of the Project site. All union sub-contractors' employees at this project refused to cross the picket line, including employees of Navillus. On or about June 26, 2007, Time Square terminated the sub-contracts of Navillus' and other union sub-contractors because they did not perform during Local 79's picketing. (Cohen Dec., Ex. K at 1-3). Time Square reinstated its sub-contract with Navillus after Time Square reached a settlement agreement with Local 79 regarding Mr. Albanese's employment. (Cohen Aff. At ¶ 14). The settlement included hiring another Local 79 laborer to work on the Project with another Local 79 contractor acting as "paymaster." (Id.)

In June, Local 79 filed a series of grievances against Navillus relating to Mr. Albanese's employment. (Cohen Dec., Ex. L at 1-9). On or about July 13, 2007, MTDC sent a letter to both Navillus and Time Square noticing its intention to arbitrate complaints pursuant to the CBA against Navillus and Time Square. (Id. at 11-13) In that letter, MTDC stated that it intends to

- 9 -