hold Time Square liable for violations relating to the employment and termination of Mr. Albanese, as a joint employer, single employer and/or alter ego of Navillus. On August 1, 2007, Defendants unilaterally sent a letter to Roger Maher, designating him as the arbitrator in its dispute with Time Square and Navillus and requesting Mr. Maher to contact the parties to schedule an arbitration on the issues raised by Defendants. (Id. at 15).

On August 14, 2007, Time Square filed this action to enjoin the Defendants from proceeding against Time Square in the Arbitration. At a hearing on August 22, 2007, this Court issued an Order directing Time Square to serve a supplemental brief on or before November 19, 2007. A hearing on Time Square's preliminary injunction motion is scheduled for November 27, 2007.

## ARGUMENT

Defendants hope to haul Time Square into arbitration based upon Time Square's common ownership with Navillus and the relationship between the two companies that existed when Time Square was first formed, well before this dispute arose. The Unions' attempt must fail. The Unions' conclusory statements that Time Square is an alter-ego of or joint or single employer with Navillus aside, the reality is that Time Square and Navillus are separate legal entities that operate independently, are in different businesses, and do not entwine responsibility for the hiring, firing or supervision of employees. In short, Time Square and Navillus are not alter-egos or single or joint employers.

Instead of addressing the facts as they exist today or at the time of Mr. Albanese's employment, the Defendants have zeroed in on the time period from the Fall of 2005 to the Spring of 2006 when Time Square was first formed. At that time, Navillus provided limited assistance to Time Square in securing its first project and getting off its feet. However, it would

NYK 1132106-3.079158.0011

"distort the company's identity" for this Court to give undue weight to those first formative months. Pioneer Holding Co., 291 NLRB 1047, 1048 (1988); see Marino Elec., Inc., 285 NLRB 344, 355 (1987) ("assistance in the formative stage is not determinative.") Time Square's true identity is that of a wholly-independent company whose only connection with Navillus is that they are both owned by Kevin and Donal and that Navillus is one of Time Square's numerous sub-contractors. As such, and as set forth more fully below, the Union is not entitled to haul Time Square into an arbitration because Time Square cannot be bound to the CBA through its limited relationship with Navillus.

A.    **Time Square is Not the Alter-Ego of Navillus**

Donal and Kevin formed Time Square to enter into a new field of construction development, not for some nefarious purpose of evading Navillus' union obligations. Courts and the NLRB have held companies to be alter-egos for labor purposes where there is a "disguised continuance or attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." See Lihli Fashions Corp. v. NLRB, 80 F.3d 743 (2d Cir. 1996) (quoting Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc, 690 F.2d 489 508 (5th Cir. 1982)). The hallmarks of these sham transactions are where companies share "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." See First Class Maint. Serv., Inc., 289 NLRB 484, 484 (1988); see also Int'l Longshoremen's Ass'n, 310 NLRB 1, 4 (1993) (finding lack of financial control and distinct business purpose fatal to alter-ego finding); Victor Valley Heating & Air Conditioning, 267 NLRB 1292, 1297 (1983) (independently operating company not an alter ego).

Here, there has been no "disguised continuance" – Kevin and Donal established Time Square for the purposes of entering into a new area of business. Creating Time Square did not

- 11 -

impact or divert Navillus' union obligations at all -- Navillus is still a thriving union company that pays hundreds of thousands of dollars to Local 79 every month. Local 79 cannot point to any diminishment of Navillus' union work force and union obligations that has occurred since the creation of Time Square. While there was some minor overlap in the companies' management and operations at the inception of Time Square, Time Square and Navillus have maintained an independent relationship since that time. The companies have entirely different business purposes, serve different customers, are managed separately, and have separate operations. In other words, the companies do not have the type of relationship that would support a finding by this Court that they are alter-egos.

      1.      Time Square has a Different Business Purpose Serving Different Customers than Navillus and was Not Created to Avoid Navillus' Union Obligations

Kevin and Donal created Time Square in order to enter into a new business, not as a sham transaction. The critical issue is whether Donal and Kevin created a non-union company (Time Square) to engage in the same type of business as its unionized, defunct or dormant alter-ego; a question often answered by comparing the business purposes of the companies. See e.g. In the matter of Armen Digital Graphics, Ltd., 96 Civ. 5844, 1997 U.S. Dist. LEXIS 11938, at * 26 (S.D.N.Y. Aug. 8, 1997). In this context, the term "different business purpose" is defined broadly. Indeed, companies have been held to have different business purposes even where they undertake almost exactly the same work. Armen Digital, 1997 U.S. Dist. LEXIS 11938, at * 25 (graphic company using traditional press methods has different business purpose than company using computers); Marino Electric, 285 NLRB at 354-355 (design/build contractor and competitive bid contractor have different business purposes). Here, Time Square engages in a completely different business than Navillus.

Navillus is a construction company that works in foundation and superstructure concrete, tile and masonry. Navillus actually performs construction work and hires union workers to accomplish that task. Like many trade specific companies, Navillus is a sub-contractor on virtually all of its work. It has only been general contractor a handful of times while working on renovation projects in the public sector. Navillus' customers are the construction management companies. On the 8th Avenue and 34th St. Projects, that customer is Time Square, on the majority of Navillus' jobs, it is a construction management company other than Time Square.

Time Square, in contrast to Navillus, is a construction management company in the private sector. It does not generally perform construction work or hire tradesmen (union or non-union) to work on its projects. Time Square hires management-level employees such as project managers or site safety managers to oversee the work being performed by sub-contractors. Time Square's customer is the owner of the property.

In sum, although Time Square and Navillus both operate in the broadly defined field of "construction," they serve entirely different business purposes. This is evidenced by the fact that Navillus works <u>for</u> Time Square on both the 8th Avenue and 34th St. Projects. Moreover, Navillus is just one of Time Square's many sub-contractors, and most of the projects Navillus works on do not involve Time Square. <u>Cf.</u> <u>Lihli Fashions</u>, 80 F.3d at 748 (company that manufactured clothing in different business than company that marketed that clothing). Nothing supports an assertion that Kevin and Donal created Time Square out of anti-union animus since Time Square operates in an entirely different field than Navillus and Navillus has not curtailed or ceased its operations one iota. (Cangelosi Tr. at 40:8-10).

    2.    While Time Square and Navillus are Owned by
                <u>Kevin and Donal They Are Managed Separately</u>

It is undisputed that Kevin and Donal each own 50% of both Navillus and Time Square. However, while the common ownership of two companies is relevant to the alter-ego analysis, "common sense attaches more significance" to the question of whether the owners actually exercise control over both companies (as opposed to "potential control"). Marino Elec., 285 NLRB at 352. Here, Time Square and Navillus are managed separately because Kevin and Donal have established bright lines of responsibility and do not interfere in each other's business. In other words, Donal does not actually exercise day to day control over Time Square and Kevin does not actually exercise day to day control over Navillus.

Donal is solely responsible for the affairs of Navillus. Kevin has not been involved with Navillus' day-to-day operations since in or around the spring of 2006. Today, Kevin and Donal do not even discuss Navillus' affairs. Kevin's main connections to Navillus are that he is president of the construction management company (Time Square) that sub-contracted work to Navillus, and a silent partner in the company who takes the profit disbursements. Although Kevin remained as a Vice President of Navillus on paper for several months after he stopped being involved in the business, that was nothing more than an administrative lag that did not impact the reality on the ground. Marino Elec., Inc., 285 NLRB at 355 (five months lag time between assumption of a role and official appointment "not unprecedented" and did not impact analysis). The reality was, and is, that Kevin no longer has any involvement in Navillus' day-to-day business.

Kevin is solely responsible for Time Square. Donal has never been an officer of Time Square. Donal is not involved in Time Square's day-to-day operations. He did not choose Time Square's subcontractors on the 8th Avenue or 34th St. Projects; in fact, he does not know who the other sub-contractors are. Donal signed a set of agreements on behalf of Time Square on one

occasion and only because the documents needed to be signed while Kevin was out of town. Today, Donal's involvement with Time Square is limited to occasionally viewing prospective projects (although Kevin ultimately decides whether to pursue the project) and, when the time comes, taking profit disbursements.

As the above makes clear, Donal does not exercise any control over the day-to-day affairs of Time Square, nor does Kevin control the day-to-day operations of Navillus. In a business sense, Donal and Kevin are nothing more than co-owners of independently run businesses. Since Donal and Kevin have chosen not to exercise control over the business run by each brother, the fact that they are co-owners is of little import to this Court's analysis. See Marino Elec., 285 NLRB at 352.

> 3.    Time Square and Navillus Operate Separately

Time Square and Navillus operate as entirely separate companies, and as such cannot be held to be alter-egos. Time Square and Navillus' employees are in separate payroll accounts. The companies keep separate financial records, bank accounts and insurance policies. The companies have been in separate offices since the Fall of 2006. Navillus' officers exercise no control over the daily operations or finances of Time Square, and vice versa. These are the facts as they exist today, when the Unions filed the Demand for Arbitration, and when Mr. Albanese was employed by Time Square. In other words, these are the facts relevant to this motion.

Instead of addressing the facts as they have existed at all times relevant to this dispute, the Unions have focused on the facts as they existed when Time Square was founded. Those facts, however, are of limited relevance. It is clear that Time Square and Navillus were more closely entwined at Time Square's inception, and that Navillus helped Time Square get off the ground. However, this is a common situation that does not give rise to a finding of alter-ego. In

- 15 -

fact, the Courts and NLRB have held that companies that engaged in almost precisely the type of

transactions at issue were not alter-egos.  For example:

- Some of Time Square's employers are former employees of Navillus. That fact is not sufficient to show that Time Square and Navillus are alter-egos. Hill Indus., 320 NLRB 1116, (1996) (the hiring away of some employees during a company's formative stage insufficient to support an alter-ego finding); Pioneer Holding Co., 291 NLRB at 1048 (same); L&J Equip., 274 NLRB at 27 (employee's movement from one company to another did not support alter-ego/single employer finding):

- Time Square leased office space from Navillus for the first several months of its existence.  While Navillus invoiced Time Square for the rental, and Time Square paid those invoices, Time Square's payments arguably may have been late.  Again, these facts are not sufficient to show that Time Square and Navillus are alter-egos. Horizon Plastics, Inc. v. Constance, No. 00 Civ. 6458, 2004 U.S. Dist. LEXIS 10051 (S.D.N.Y. May 28, 2004) (fact that one company invoiced another for office space and staff members belied finding of alter ego); Armen Digital, 1997 U.S. Dist. LEXIS 11938, at *25 (no finding of alter-ego where companies shared office space and services of bookkeeper); U.S. Reinforcing, Inc., Case 3-CA-25314, 2007 NLRB LEXIS 291 (Jul. 31, 2007) (fact that purported alter-ego company was "flexible" with respect to rental of office space "falls far short of showing a less than arms-length relationship");

- Before Time Square came into being, Kevin and Mr. DelGreco operated out of Navillus' offices and used Navillus' computers and printers.  Some of the documents they created have an automatically generated "Navillus" heading.  Again, this fact is insufficient to support a finding of alter-ego. Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F. 3d 130 (2d Cir. 1997) (fact that start up-company had no independent office space or separate bank accounts insufficient to support alter-ego finding); L&J Equip., 274 NLRB at 27 (the fact that new company benefited in its formative period from use of facilities and family land connections insufficient to show that companies are alter-egos).

- Navillus agreed to complete the 8th Avenue Project on an cost-plus basis.  Contrary to the Union's assertions before this Court, that fact is not a damning display of close-dealings.  Time Square asked Navillus to take the project on a cost-plus basis out of necessity because the drawings on the project were incomplete and, thus, the foundation and superstructure concrete could not be properly priced or bid.  Navillus agreed to do so because the company was just entering the foundation and superstructure concrete business and wanted to have an addition project on its resume.  In sum, this was a transaction borne of necessity that benefited all parties.  This type of transaction, even if viewed as not strictly arms-length, does not warrant an alter-ego finding. Marino Electric, 285 NLRB at 353 ("deviations from a strictly arms-length handling" of transactions "only of marginal significance").

NYK 1132106-3.079158.0011

In sum, during the time frame relevant to this motion, Time Square and Navillus did not entwine their operations at all. What little overlap existed when Time Square was first formed is (i) of limited relevance and (ii) insufficient to support a finding that Time Square and Navillus are alter-egos. As such, Time Square cannot be hauled into an arbitration under the CBA as the alter-ego of Navillus.

**B.     Time Square is Not a Single Employer with Navillus**

Time Square and Navillus are not a single employer, but rather distinct corporate entities. A court may find that two companies are single employers based on: (1) the interrelationship of operations; (2) common management; (3) centralized control over labor relations; and (4) common ownership or financial control of the companies. Canned Foods, Inc., 332 NLRB 1449, 1449 (2000) (affirming ALJ's finding that no single employer relationship existed). Under this analysis, "'[c]ommon control *must be* actual or active, as distinguished from potential control.'" Canned Foods, 332 NLRB at 1450 (quoting Western Union Corp., 224 NLRB 274, 276 (1976))(emphasis added). The question of common ownership is the least critical factor in the analysis. Chauffeurs, Teamsters & Helpers Local Union No. 776, 313 NLRB 1148, 1165 (1994); L&J Equip. Co., 274 NLRB 20, 27 (1985).

In addition, even if employers are held to be a single employer, they can only be bound to a contract signed by one of them if the employees of each constitute a single bargaining unit. NLRB v. Don Burgess Construction Corp., 596 F.2d 378, 386 (9th Cir. 1979).

As set forth in detail in § A *supra*, Time Square and Navillus are commonly owned companies operating in different businesses that do not share interrelated operations or management. Kevin does not exercise any control over or receive a salary from Navillus, nor does Donal exercise control over or receive a salary from Time Square. Time Square's only

- 17 -

connection to Navillus (other than on the basis of ownership) is that Navillus is one of many sub-contractors on Time Square's projects. This is not the type of relationship that would warrant a finding by this Court that Time Square and Navillus are single employers. Cf. Lihli (companies held to be single employer where single president exercised business control over both companies, family members received payroll checks from both companies, and each company *exclusively served the other*).

The only outstanding questions under the single-employer analysis are whether Time Square and Navillus have a centralized control of labor relations or whether their employees could properly be viewed as a single bargaining unit. The Unions will not be able to meet either of these pre-requisites to a finding that Time Square and Navillus are a single employer.

1.    There is No Centralized Control of Labor Relations

The most important factor in the single employer analysis is whether the companies have centralized control of labor relations. The lack of evidence that two companies employ workers "interchangeably" or share common management affecting labor relations suggests they are not a single employer. See Canned Foods, 332 NLRB at 1449; ICC Air Servs. Corp., 316 NLRB 395, 401 (1995) (two companies not a single employer where labor policies decided by different bodies); Richmond Convalescent Hosp., 313 NLRB 1247, 1250 (1994) (two companies not single employer because no common control over day-to-day operations or labor relations). Evidence of minimal or routine supervision of employees is insufficient to support a finding that two companies are a single employer. Local No. 776, 313 NLRB at 1161.

Here, there are no employees on the payroll of both Time Square and Navillus. The mere fact that a handful of Time Square's employees were *previously* employed by Navillus does not mean that Time Square and Navillus employ workers "interchangeably". *Once those employees*

NYK 1132106-3.079158.0011

*moved to Time Square, they did not go back to work for Navillus.*  The companies do not loan out employees to each other.  Time Square has the sole right to hire, fire, discipline and manage its employees.  Navillus, in turn, is solely in control of its employees.  As such, Time Square and Navillus do not centralize control over their labor relations.

      2.    <u>Time Square's and Navillus' Employees Are Not a Single Bargaining Unit</u>

Time Square and Navillus' employees are not a single bargaining unit because their employees serve entirely different functions.  Employees constitute a single bargaining unit where they have a "community of interests" evidenced by a similarity of skills, duties, and working conditions.  <u>See</u> <u>e.g.</u> <u>Pacific Southwest Airlines v. NLRB</u>, 587 F.2d 1032, 1038 (9th Cir. 1978).  Time Square's management employees cannot properly be placed in a single bargaining unit with the union tradesmen who work with Navillus.

Time Square hires managers (who cannot be unionized as a result of their status as managers); Navillus hires skilled tradesmen.  Time Square's employees are required to supervise the job-site by dealing with the managers of the sub-contractors (Time Square does not directly supervise the employees of its subcontractors).  Navillus employees do actual construction work (and are directly supervised by Navillus management only).  Time Square's employees work out of the company's New York office and perform site visits, Navillus' employees work on jobsites day in and day out.  Time Square's employees work on computers, most of Navillus' employees work with equipment in the field.

In other words, Time Square's employees have entirely different skills, duties and working conditions.  They have no "community of interest" with respect to the Unions.  As such, Time Square and Navillus' employees are not a single bargaining unit and the companies cannot be bound to each other's contracts.  <u>See</u> <u>Lihli Fashions Corp. v. NLRB</u>, 80 F.3d 743 (2d Cir.

- 19 -

1996) (sales and marketing employees do not constitute an appropriate bargaining unit with production, maintenance and shipping employees, even where companies "single employer").

**C.    Time Square and Navillus are Not Joint Employers**

Companies are joint employers when they "share or codetermine those matters governing the essential terms and conditions of employment." H&W Motor Express, Inc., 271 NLRB 466, 467 (1984)(citations omitted).  In order to find that two companies are joint employers, a court must be satisfied that one company possesses "sufficient indicia of control" over another company's employees.  Id. at 467-68 (no indicia of control where one company's employees worked in the facility of another company that did not "meaningfully affect" those employees' relationship with their employer).  As the NLRB has clarified:

> "In sum, the issue to be resolved . . . is whether [one company] exercises or has the right to exercise sufficient control over the labor relations policies of [another company] or over the wages, hours and working conditions of the [other company's] employees from which it may be reasonably inferred that the [company] is in fact an employer of the [other company's] employees."

Bonita Nurseries, Inc., 326 NLRB 1164, 1167 (1998) (citing S. Cal. Gas Co., 302 NLRB 456 (1991)); see also TLI, Inc., 271 NLRB 798, 799 (1984) (no joint employers where there was no evidence that one company affected the terms and conditions of employment of another company's employees).

Navillus has no control over Time Square's employees, and vice versa.  Time Square independently determines its employees' wages, hours and working conditions.  With respect to Mr. Albanese, as the Unions' 30(b)(6) witness admitted, Time Square alone determined his hours, supervised his working conditions, and was ultimately responsible for paying him.  Any attempt by the Unions to infer that Navillus was Mr. Albanese's employer is disingenuous.  In

- 20 -

fact, the Contractor Request Report filled out by Local 79 makes clear that Time Square was Mr. Albanese's real employer.

The fact that Navillus served as "paymaster" for Time Square's employment of Mr. Albanese so that Mr. Albanese could receive union benefits is beside the point. See Nw. Ohio Adm'rs, Inc. v. S.E.A. Builders Corp., 183 F. Supp. 2d 991, 994 (N.D. Ohio 2002) ("Their use of a 'common paymaster' . . . simply does not outweigh the substantial evidence that the two companies are distinct in what they do, how they do it, and who does it."); Prospect Lefferts Garden Neighborhood Ass'n, 269 NLRB 670, 673 (1984) (using one company as paymaster for union employees does not support finding of centralized labor relations). A paymaster is nothing more than a "bureaucratic conduit for paperwork" that does not determine the pay practices of the employer or have any right to control, supervise, hire or fire the employee. Prospect Lefferts, 269 NLRB at 673.

Here, Navillus' duties as paymaster were similarly nothing more than to perform bureaucratic functions to assure that Mr. Albanese got his union benefits. Navillus had no control over the terms of Mr. Albanese's employment, did not supervise Mr. Albanese, and had no input into any decision to discipline Mr. Albanese. In short, Navillus did nothing more than take Time Square's money and use it to pay Mr. Albanese and contribute to union benefits on his behalf. All of this was done with the union's knowledge and acquiescence.

## CONCLUSION

For the foregoing reasons, Time Square respectfully requests that this Court grant its motion for a preliminary injunction to enjoin the Defendants from hauling Time Square into an arbitration under the CBA because Time Square and Navillus are separate companies with different business purposes that cannot be held to be alter-egos or joint or single employers.

- 21 -

Dated: November 19, 2007
     New York, New York

                                  **MCDERMOTT WILL & EMERY LLP**

                       By: _____
                              Joel E. Cohen (JC 5312)
                              340 Madison Avenue
                              New York, New York 10173
                              (212) 547-5400

                              Attorneys for Plaintiff
                              *Time Square Construction, Inc.*

- 22 -