UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TIME SQUARE CONSTRUCTION, INC.

                          Plaintiff,

                                                    07-CV-7250
            - against -                             (SAS)(AJP)

MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK & LONG ISLAND
AND GENERAL
LABORERS JATC, LOCAL UNION NO. 79,

                          Defendants.
-----------------------------------------------------------X

**Defendants' Reply Memorandum of Law**

Mason Tenders District Council of Greater New York & Long Island (the

"MTDC") and Construction General Laborers JATC, Local Union No. 79  ("Local 79")

submits this Reply Memorandum of Law in opposition to the motion of plaintiff Time

Square Construction, Inc. ("Time Square" or the "Employer") for an injunction to stay an

arbitration.

**Preliminary Statement**

This case presents the unique situation in which a non-union employer (Time

Square) agreed to use a laborer referred by Local 79 to perform work within the union's

jurisdiction and agreed to pay the laborer full union wages and benefits.  Time Square

also agreed that a closely-related company owned by the same people (Navillus) would

serve as "paymaster", which meant Navillus agreed to apply the Local 79 CBA.  Despite

this arrangement, and despite the extraordinarily tight relationship between the two

companies, Time Square asserts that it has no obligation to honor the dispute resolution mechanism in the union contract.

Donal O'Sullivan and Kevin O'Sullivan, who each own 50% of Navillus Tile, Inc. ("Navillus"), jointly formed Time Square, which they also own 50/50. They are also co-owners of the property and development project at 8th Avenue and 48th Street in Manhattan (the "8th Avenue Project"). Their development partners insisted that Navillus perform the concrete foundation, superstructure, and masonry work on that project, precisely because the interests of Navillus were completely aligned with those of Time Square. All of Time Square's initial employees were hired from Navillus, and the influx continued through the middle of 2007.

The extremely close relationship between the two entities was most evident in connection with the employment of Nicholas Albanese, a Local 79 shop steward, at the jobsite. Time Square directed his work and Navillus paid him pursuant to the terms of the Local 79 collective bargaining agreement (the "CBA").

A dispute arose about whether the CBA was violated and the MTDC filed a demand for arbitration against both Navillus and Time Square. Time Square brought this action to enjoin the arbitration as to Time Square. Navillus has not entered an appearance in this action to state a position on this issue. The evidence demonstrates that Time Square and Navillus are sufficiently related to require Time Square to participate in the arbitration. They are joint employers, a single employer, or alter egos.

### Statement of Facts

<u>The relationship between the companies</u>

2

Although the Plaintiff seeks to portray the two companies as separated by an arm's length, they are as closely related as two brothers.  Donal and Kevin O'Sullivan each own 50% of both companies, and they created Time Square together.

As Donal Testified,

We talked about getting into development some while back.  We agreed after looking into some properties, we agreed that he would. Kevin would, run that division, I would run the Navillus division.

Transcript of Donal O'Sullivan Deposition of October 18, 2007 ("D.O. Tr.") at p. 9, ln. 13-17  (Exhibit B to the Affidavit of Lowell Peterson)("Peterson Afft.")[1].  See also p. 50, ln. 3-5, ln. 24-25 – (Kevin "was going to run the development <u>side</u> of – he was going to run the development for both him and me… I was always doing the Navillus <u>side</u> of the work…) (emphasis added).

No capital was invested in Time Square.  Transcript of Kevin O'Sullivan Deposition of October 26, 2007 ("K.O. Tr.") at p. 13, ln. 2-5  (Exhibit A to Peterson Afft.).

It was Donal who filed Time Square's Certificate of Incorporation in Delaware, and he was listed as the corporation's director.  He also filed the Certificate in New York, Tabs 2, 3, and 5 to Exhibit Binder submitted at November 26, 2007 hearing ("Exhibit Binder").

Time Square filed a Certificate of Amendment of the Certificate of Incorporation with the State of New York stating that the name of "Time Square Construction, Inc." would henceforth be "Navillus Concrete, Inc.", which Donal testified was a "d/b/a" for

---

[1]  The transcripts of the Kevin O'Sullivan and Donal O'Sullivan were made available in miniscript form. The citations in this memorandum are to the page numbers in the actual transcripts, not the miniscript page numbers.

Navillus. Exhibit Binder Tab 4; D.O. Tr. at p. 4, ln. 19-22. Kevin O'Sullivan testified that his brother told him a week before the hearing that this was done only to avoid paying another incorporation fee for Navillus Concrete, which is absurd. Transcript of November 26, 2007 hearing ("Nov. 26 Tr.") (Exhibit D to Peterson Afft.) at p. 40, ln. 14-21. Even if this is true, it demonstrates that the O'Sullivans made no effort to honor the corporate form.

Time Square had no employees and it operated from Navillus' offices for most of 2006. Indeed, the Time Square "offices" were actually the offices occupied by Navillus employees who later went onto Time Square's payroll. K.O. Tr. at p. 18, ln. 3 to p. 20, ln. 17. Time Square did not actually pay anything for the use of the space until June 2007 and did not finish paying until September 2007, after the litigation commenced. Exhibit Binder at Tab 9.

This case is about events at the 8th Avenue Project, and Time Square and Navillus have been completely intertwined at that project. Donal and Kevin are 50/50 owners of 8th and 48th Street Development, LLC ("8th and 48th"), which in turn owns 50% of the property at 8th Avenue with an entity owned by two other individuals, Jay Eisenstadt and David Scharf. This combined entity is called "785 Partners LLC". Thus, the O'Sullivans are co-owners and co-developers of the 8th Avenue Project[2].

Not surprisingly, these development partners engaged Time Square to be the general contractor or construction manager for the job. The construction manager agreement was signed by Donal, not by Kevin. Exhibit Binder at Tab 12, Bates stamp p. 01074. So was the Rider Addendum. Tab 12 at Bates stamp p. 01080. Donal also

---

[2] This Memorandum does not contain detailed citations to the record for those foundational facts to which the parties stipulated at the November 26 hearing - e.g., ownership of the various entities.

signed the General Conditions agreement on behalf of Time's Square, including the Rider. Tab 13, last page. The Plaintiff seeks to explain away these signatures by asserting that Kevin was probably out of town at the time; this must have been a long trip because Donal signed and filed the incorporation documents in mid-February 2006 and signed the general contract/construction manager documents in March. In any event, Donal acknowledged that his signature was binding on Time Square. D.O. Tr. at p. 48, ln. 3-5.

In order to obtain financing for the project, the O'Sullivans needed a detailed estimate of the cost of each aspect of the construction. This document was called "785 Eighth Avenue Conceptual Survey" and it was prepared by Navillus. It is dated February 28, 2006. Exhibit Binder Tab 11. Anthony DelGreco was the Navillus employee who prepared the document. He transferred to the Time Square payroll about four months later. D.O. Tr. at p. 28, ln. 5 to p. 30, ln. 24. Exhibit Binder at Tab 10, Bates stamp p. 00319 (first entry on payroll on 6/26/06).

The Plaintiffs pretend that the document was actually prepared by Time Square and that "Navillus" appears in the heading only because it was printed out from the Navillus computer system. This is absurd. As Kevin O'Sullivan admitted, it would have been a simple matter to type "Time Square" into the computer and that name would have appeared. K.O. Tr. at p. 98 (ln. 24-25) – 99 (ln. 2-6) Moreover, Time Square had absolutely no track record in February 2006. In fact, Time Square did not even sign the general contract/construction manager agreement until March 3. The reality is that Time Square depended on Navillus' experience and gravitas to get the 8th Avenue Project off the ground. Time Square had no track record. Nov. 26 at p. 73, ln. 18-25, p. 74, ln. 1-6.

Nor did Navillus just walk in off the street to get the contract for the concrete foundation, the concrete superstructure, and the masonry work.  Although the contracts were not signed until late 2006, Navillus was selected "at the very beginning." K.O.  Tr. at p. 52, ln. 14-19, p. 53 ln. 7-11 (selected on cost-plus basis in the "very early stages").

The O'Sullivans' development partners insisted that Navillus perform the concrete and masonry work, and that it do so on a cost-plus basis.  As Kevin testified at his deposition:

> A.  Because Navillus they file if Navillus was the owners, were part of the development, that they wouldn't, it would be fair, they wouldn't screw each other, excuse my language, and they knew that, you know, being that the - one of the owners of or the owners of the project was performing the work, that it was in their best intentions that the work would be performed and done as aggressively as possible and get the job done, and they wouldn't get held up.
>
> Q.  You spoke with your other partners about that and that's what they told you?
>
> A.  Oh, yes.

K.O. Tr. at p. 50 ln 10-22.

Navillus has been performing the work on a cost-plus-10% basis.  Exhibit Binder at Tabs 14, 15.  Kevin testified that this was far below the market price, and that contractors can easily obtain profit margins of 20% or more on this kind of work.  K.O. Tr. at p. 51 (ln. 18-25) – 52 (ln. 2-4).  No bids were solicited for this work.  K.O. Tr. at p. 44 (ln. 23-25).

Kevin O'Sullivan was an officer of Navillus at the time these decisions were being made.  In fact, he was an officer until September 2006, even though he was "well tied up" with the 8th Avenue Project D.O. Tr. at p. 51, ln. 16.

Although Kevin testified at the hearing that Navillus wanted to establish itself as capable of performing concrete superstructure work, Navillus had completed a major superstructure project in 2005. K.O. Tr. at p. 100 (ln. 11-13) – 101 (ln. 2-6).

Time Square's construction manager contract for the 8th Avenue Project provides for a Gross Maximum Price – so the owners – including the O'Sullivan brothers – benefit from any cost savings during the construction. K.O. Tr. at p. 49, ln. 8-22.

Navillus is not a niche player. Donal testified that Navillus does "concrete, masonry work, tile work, plaster work, that type of work, carpentry work." D.O. Tr. at p. 11, ln 18-19. Navillus' Certificate of Incorporation states that the purpose for which Navillus was formed including "to engage in the business of and to act as general contractors . . ." Navillus has functioned as general contractor on ten projects. Exhibit Binder at Tab 7 p. 1; D.O. Tr. at p. 11 (ln. 23-25) – 11 (ln. 2).

All of the key players at the 8th Avenue Project were Navillus employees – some until mid - 2007. Fergal Confrey was a project manager for Navillus. In October 2006 he went onto Time Square's payroll, where is the project manager at the 8th Avenue Project. D.O. Tr. at p. 39 (In. 13-25) -40 (ln. 2-6); Exhibit Binder at Tab 10, Bates stamp p. 00319.

As discussed above, Anthony Del Greco was a Navillus employee until late June 2006, when he went onto Time Square's payroll. He prepared the pro forma.

Liam ("Lenny") Kelly was a project superintendent at Navillus. In April 2007 he went onto Time Square's payroll. He is a project superintendent at Time Square. K.O. Tr. at p. 30 (ln. 17-25) – 31 (ln. 2-3), Tab 10 at Bates stamp p. 00321. Thea Clarke was

employed by Navillus. She went only Time Square's payroll in May 2006. K.O. Tr. at p. 24, ln. 22, – p. 25, ln. 5, Tab 10 at Bates stamp p. 00319, p. 33-36.

At all times relevant to this proceeding, Wayne Murphy was the Site Safety Supervisor at the 8th Avenue Project. He was employed by Navillus until the end of June 2007, at which point he became employed by Time Square. He remained the Site Safety Supervisor after he went onto Time Square's payroll. Time Square represented to the City Department of Buildings that Murphy was "our" site safety inspector while Murphy was on Navillus' payroll. Exhibit Binder at Tab 19.

Murphy told Cangelosi at the jobsite that Navillus and Time Square were the "same company". Nov. 26 Tr. at p. 98, ln. 16-19.

Representatives of Lehr Construction continued to contact Kevin O'Sullivan with questions and concerns about Navillus projects (other than the 8th Avenue Project) until mid-2007. This included questions and comments about the scheduling of jobs, manpower issues, problems on the job, and so forth. K.O. Tr. at p. 36, ln. 3-14. Exhibit Binder at Tab 6[3]. Although Kevin apparently told them he was no longer at the company, he would follow up calling Navillus and say "that they, Lehr are a good client. Make sure you do the right thing." Nov. 26 Tr. at p. 90, ln. 8-9.

Donal O'Sullivan participates in reviewing new project possibilities for Time Square, in attending meetings at which Time Square attempts to obtain financing, and in reviewing Time Square documents. K.O. Tr. at p. 39 (ln. 9-25) – 40 (ln. 2-10).

Navillus is a member of the Building Contractors Association, a multi-employer bargaining association which has a collective bargaining agreement with the MTDC and

---

[3] Apparently Kevin's Navillus email address was closed in early 2007. This email show that Lehr representatives were still reaching out to Kevin for help with Navillus problems as late as August 2007.

Local 79.  Accordingly, Navillus is party to a collective bargaining agreement with the MTDC and Local 79.  Exhibit Binder Tab 1.

Nicholas Albanese

In about April or May 2007 Local 79 Business Agent Joseph Cangelosi approached representatives of Time Square and representatives of Navillus about having certain work performed by a Local 79-represented laborer.  He talked with Wayne Murphy, who referred him to Fergal Conefrey.  Conefry (who was on Time Square's payroll by then) referred him to Gabriel MaCauley at Navillus. Nov. 26 Tr. at p. 98 (ln. 10-25), 99 (ln. 7-19). Cangelosi also spoke with Kieran Power at Time Square.   Power had been a Navillus employee, and Cangelosi had talked with him in connection with a previous Navillus job.  Cangelosi got bounced back and forth between Time Square representatives and Navillus representatives until Navillus finally said the request to put a Local 79 laborer on the job had been approved.  Transcript of Joseph Cangelosi Deposition of October 18, 2007 ("Cangelosi Tr.")(Exhibit C to Peterson Afft.) at p. 18 (ln. 2-25) - 19 (ln. 2-16)("Navillus was going to hire the 79 guy"); p. 39, ln. 10-14.  K.O. Tr. at p. 27 ln. 20-23 (confirming Power had been Navillus employee).

Time Square agreed to hire a Local 79-represented laborer and a request was made to the Local 79 hiring hall.  The request listed both companies.  Exhibit Binder Tab18.

Although the Plaintiff presents this as a unilateral Time Square decision, that is not how Kevin O'Sullivan described it at his deposition.  He testified that Gabriel at Navillus complained that Local 79 was "tormenting" Navillus to put a man on.

I thought, you know, as I said, being my prior relationship being with Navillus for so long and being the Navillus has with Local 79 and just to keep peace rather

than - I says guys, fine, give us a guy that will work, and give us a guy that who has a site safety license so we could keep him. . . .

K.O. Tr. at p. 65 ln. 23-25, 66 ln. 1-5.

Local 79 member Nicholas Albanese was sent to the 8th Avenue Project to work and to be the shop steward. The Union cleared this with both Time Square and Navillus. As Fergal Conefrey wrote in an email to Navillus (cc to Kevin):

> FYI - John Brosnan [a Local 79 representative] called me on my cell to say he was sending a Local 79 laborer to job on Tuesday. He said he squared this away with Gabriel.

Exhibit Binder at Tab 16.

This was a reference to Gabriel McCauley of Navillus.

Time Square says it directed Albanese's work. Kevin testified that Albanese (and his replacement) were doing work that supposed to be performed by laborers at Navillus. Nov. 26. Tr. at p. 85, ln. 15-25.

To the extent he was paid for working at the 8th Avenue Project, Albanese was paid by Navillus. This was pursuant to a "paymaster" arrangement as provided in the collective bargaining agreement. Navillus was responsible for paying Albanese wages and benefits (e.g., contributions to benefit funds, Social Security, and so forth) for the duration of the job. Cangelosi Tr. at p. 8 (ln. 19-25) – 9 (2-5), p. 13, (ln. 8-18), p. 24 (ln. 24-25) – 25 (ln. 2-24), 24; Exhibit Binder Tab 1.

It was Navillus, as signatory to the CBA, which determined the wages, benefits, terms and conditions of Albanese' employment. Although Time Square directed Albanese' work, Navillus was also responsible for applying all of the terms of the CBA to him. CBA at Article III Section 3. It was Time Square which determined that Albanese was no longer employed at the 8th Avenue project.

Albanese found that another individual was performing the same kind of clean up work he was supposed to perform - Fergal Cronin.  At his deposition, Kevin O'Sullivan acknowledged this and said he would have been happy to have Albanese perform this work.  K.O. Tr. at p. 81, ln. 5-11, p. 84, ln. 7-19.

After Albanese was terminated,[4] Time Square contacted Local 79 to request that he be replaced as shop steward by Barrenston Morgan, who had been working at a Navillus job site since early 2007.  Kevin O'Sullivan agreed to hire another Local 79 Laborer only if it was "one of his guys".  Nov. 26 Tr. at p. 101 ln. 12-14.  Kevin got Morgan's name from Navillus.  Nov. 26 Tr. at p. 101 (ln. 20-25) – 102 (ln. 1-8).

## Argument

At the November 14, 2007 conference before this Court counsel to Time Square admitted that the Plaintiff's real concern was not the Local 79 grievance being arbitrated but Time Square's relationships with various other unions.  Whatever the Plaintiff's motive, its aim is not sufficiently sharp.

Plaintiff's expansive assertions about differences between Navillus and Time Square simply do not apply to the situation presented in this case, as opposed to some other hypothetical cases which are not before this Court.  Regardless of whether the two companies are sufficiently related to be joint employers of, say, plumbers employed by a subcontractor in which the O'Sullivans have no interest, the fact is that Time Square and Navillus jointly employed a Local 79-represented Laborer, Nick Albanese.  The evidence is unequivocal that Time Square agreed to employ Mr. Albanese and that Navillus agreed

---

[4] The parties do not agree whether Time Square fired Albanese or he quit.  This is an issue for the arbitrator, not the Court.

to put him on its payroll and apply all of the terms of the CBA to him, with Time Square

reimbursing Navillus in full for whatever was paid to or on behalf of this Local 79

member.

Similarly, whatever the relationship between Navillus and Time Square might be

in the abstract, the fact is that they were (and are) inextricably intertwined with respect to

the 8th Avenue Project.  The Plaintiff attempts to pass off Navillus' involvement as being

minimal, and relevant only to the early period before which Time Square was able to

walk on its own.  True, there was no meaningful difference between the two companies at

this stage, as the cost estimate/pro forma prepared by DelGreco and the incorporation

documents show.  As Kevin O'Sullivan admitted, Navillus has been performing the

concrete foundation and superstructure work, and the masonry work, not because of some

timing glitch with construction drawings, but because the O'Sullivans own both it and

Time Square, and co-own the 8th Avenue Project.  The O'Sullivans' co-developers

insisted that Navillus continue to participate precisely because the economic interests of

Time Square and Navillus are completely aligned on the Project.  Otherwise, as Kevin

O'Sullivan testified, Navillus could have charged vastly more money for its work.  In

other words, far from being a mere subcontractor with an arms'-length relationship,

Navillus is in effect a co-venturer on the project.

**I.    The Legal Standards**

In Clinton's Ditch Cooperative Co., Inc. v. NLRB, 778 F2d 132 (2nd Cir. 1985),

cert. denied, 479 U.S. 814 (1986) the Second Circuit described the legal standards for

determining single employer and joint employer status.  The Court wrote:

> A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a "single employer"'.

778 F.2d at 137 (quoting <u>Browning-Ferris Industries</u>, 691 F.2d 1117, 1122 (3rd

Cir. 1982). <u>See also</u> <u>Lihli Fashions Corp. v. NLRB</u>, 80 F.3d 743 (2nd Cir. 1996).

> By contrast, in a joint employer situation,

> there is no single integrated enterprise. A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they have merely chosen to handle certain aspects of their employer-employee relationships jointly.

778 F. 2d at 137.

Thus, in a joint employer situation it is not necessary to show any particular

interrelationship of ownership or operations. The issue is whether two (or more)

employers "exert significant control over the same employees". <u>NLRB v. Browning-</u>

<u>Ferris Industries of Pennsylvania, Inc.</u>, 691 F.2d 1117, 1123-1124 (3rd Cir. 1982); <u>Boire</u>

<u>v. Greyhound Corp.</u>, 376 U.S. 473, 481 (1964).

### A.    Joint Employer

Time Square and Navillus were clearly joint employers of Nick Albanese at the

8th Avenue Project. Time Square directed his day to day work and Navillus assumed

responsibility for paying him the wages and benefits required by the CBA.

Time Square's attempt to get Navillus off the hook as Albanese' employer is

perhaps an admirable display of fraternal solidarity but there is no question that Navillus

agreed to the employment arrangement. Article III Section 3(c) of the CBA  applies to

paymasters such as Navillus.  It says:

> The Employer acknowledges and agrees that it and the company for which it is serving as paymaster are joint employers and one another's agents for all work performed at the site. The companies in the paymaster relationship shall be

jointly and severally liable for all violations of this Agreement committed by
either, whether acting independently or in concert . . .

Exhibit Binder at Tab 1, p. 8-9.

Regardless of whether Time Square is sufficiently related to Navillus to become
bound by this provision, there certainly is no question that <u>Navillus</u> is bound[5]. It is a
signatory to the CBA. It is certainly and unequivocally liable for any violations of the
Agreement, even if those violations were committed or caused by Time Square.

Navillus has been a paymaster before, and both brothers have had
experience with the arrangement [6]. D.O. Tr. at p. 62, ln. 11-23, K.O. Tr. at p. 73 (ln. 18-
25) – 74 (ln. 2-14). In others, they went into the paymaster arrangement at the 8th Avenue
Project with both eyes open. Inasmuch as Time Square admits to being Albanese'
employer and Navillus does, as well, by agreeing to be paymaster, they are joint
employers[7].

The question of whether Time Square has control over any other Navillus
employee - or vice versa - is irrelevant. It makes no difference whether Time Square had
any say in hiring or firing, for example, Navillus' project superintendent, or whether

---

[5] Thus, the "paymaster" cases relied upon by Time Square are inapposite. <u>Nw. Ohio Adm'rs Inc. v. S.E.A.</u>
<u>Builders Corp.</u>, 183 F. Supp. 2d 991 (ND Ohio 2002); <u>Prospect Lefferts Garden Neighborhood Assn.</u>, 269
NLRB 670 (1984). The paymasters in these cases were not union signatories who agreed to serve as joint
employers with the non-paymaster entities and agreed to be liable for the other entities' contract violations.
[6] Indeed, it was Nick Albanese, then a Local 79 business agent, who asked Navillus to serve as paymaster
on a job about ten years ago. D.O. Tr. at p. 62, ln. 11-23.
[7] For this purpose it is not necessary to determine whether Article III Section 3(c) is binding on Time
Square, or to address the intriguing issue of whether such a provision could be binding on a non-signatory
under the unique circumstances of this case (that is, the extraordinarily close relationship between the two
companies). It is undisputed that Time Square was Albanese's employer. Under the CBA, Navillus was
also his employer.

Navillus had any responsibility for the wages and benefits paid to, for example, Time Square's office staff[8].

This is not a situation in which an employer is dragged against its will into abiding by the terms of the collective bargaining agreement. Time Square entered the paymaster arrangement with Navillus knowing that it would have to pay Albanese precisely what the CBA required. No one is trying to force onerous wages or benefits on an unsuspecting employer. Kevin O'Sullivan (like his brother Donal) knew exactly what was involved because Navillus had served as paymaster on other jobs while he was an officer there. For that matter, Time Square has continued this arrangement with a new paymaster (and a new Laborer - Barreston Morgan ).

What is particularly unusual here is that the non-signatory employer is seeking to be insulated from the consequences, not of the union signatory's actions, but its own.

Indeed, this case appears to be unique. Time Square has not cited a single case in which a non-union company admittedly employed a union member and a union company expressly assumed responsibility for applying the union contract to him and for paying his wages and benefits.

Because Time Square and Navillus are joint employers with respect to Albanese, Time Square must arbitrate the dispute involving that Laborer. Longstreet Associates, L.P. v. Bevona, 16 F. Supp. 2d 290, (SDNY 1998); see also Newmark & Lewis, Inc. v. IBT Local 814, 776 F. Supp. 102 (EDNY 1991).

**B.   Single Employer**

As noted above, separate companies are a single employer if they are "part of a

---

[8] In Bonita Nurseries, 326 NLRB 1164 (1998), relied upon by the Plaintiff, an employee of one entity performed some bookkeeping work for the other but had no influence over any relevant matters. Navillus, by contrast, was responsible for applying the CBA to Time Square's Laborer employee.

single, integrated enterprise". Clinton's Ditch Cooperative, 778 F.2d at 137; Lihli

Fashions, 80 F.3d at 747.

> Ultimately, single employer status depends on all the circumstances of the case
> and is characterized by the absence of an 'arm's length relationship among unintegrated
> companies'

80 F.3d at 747 (quoting NLRB v. Al Bryant, Inc., 711 F.2d 543, (3rd Cir. 1983),

cert. denied, 464 U.S. 1039 (1984)). There is certainly no arm's length relationship here.

See also, Fuchs v. Cristal Concrete Corp., 2006 U.S. Dist. LEXIS 48767 (EDNY 2006)

(owners were members of same family and offices were on same street, parties lacked

arms length dealings)

> The Lihli court applied a four-factor test, relying on Radio & Television

Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S.

255, 256 (1965): interrelation of operations, common management, centralized control of

labor relations, and common ownership. "To demonstrate single employer status, not

every factor need be present, and no particular factor is controlling." 80 F. 3d at 747.

Naperville Ready Mix, Inc. v. NLRB, 242 F.3d 744 (7th Cir. 2001) cert. denied, 534 U.S.

1040 (2001) (three companies were single employer even without centralized control of

labor relations or same identical ownership). If a non-signatory company which is found

to be a single employer with a unionized company, it is bound to the collective

bargaining agreement if there is an appropriate bargaining unit. Lihli, 80 F.3d at 747-

748.

### i. Single employer factors

*Interrelation of operations*

From the beginning of the 8th Avenue Project the operations of Navillus and Time Square have been closely interrelated.  In fact, they were essentially the same company for most of 2006.  Time Square had no employees and no separate offices when it entered the contract to run the construction at the 8th Avenue Project.  Donal O'Sullivan was the sole director of Time Square for some period of time, according to the incorporation papers he filed with the government, and Kevin O'Sullivan was an officer of Navillus for most of the year.  He was an officer of both companies when the decision was made to use Navillus.  Donal was an officer of Navillus when he signed the construction manager contract for Time Square.

Time Square seeks to downplay these facts by asserting that Navillus was just a nursemaid providing some nominal assistance until Time Square could walk on its own.  However, the economic reality of the 8th Avenue Project is that Time Square and Navillus are in effect co-venturers, even now.  The O'Sullivan brothers own half of the project.  Time Square has a Gross Mean Price contract (signed by Donal) with the owners.  This means that, if Time Square is able to pay the subcontractors who work at the project a total amount that is less than Time Square's contract price, the owners can keep the savings.  KO Trans. at p. 49, ln. 3-20.  This is why Navillus and Time Square agreed that Navillus would be paid on a cost-plus basis, and that Navillus would forego as much as half of the profit it might have achieved on the market.  This makes complete economic sense because both O'Sullivan brothers sit on both sides of the transaction.  If Navillus charged more, that simply would have come out of Time Square's and the owners' pockets - a case of robbing Peter to pay . . . Peter.

This is a concrete frame building so Navillus was responsible for the lion's share of the work at the Project. Once a subcontractor dug the foundation, Navillus poured the foundations and it is building the entire structure; the concrete work was still underway at the time of the evidentiary hearing. Thus Time Square and Navillus are working closely together every day, and the people who transferred from Navillus' payroll to Time Square's payroll interact with their former colleagues constantly (just as they did in connection with hiring Albanese and then Morgan). As noted above, it was Navillus that prepared the detailed cost estimates needed to obtain financing for the project, and the Time Square employees running the jobsite are all former Navillus employees. In other words, Navillus has been a central component of the 8th Avenue Project from the very beginning and will remain a central component through completion of the tower.

Moreover, the operations of the two companies were completely interconnected with respect to Albanese. Both entities agreed Albanese could be put on the job. Time Square agreed to employ him to perform general clean-up work in order to maintain peace between Local 79 and Navillus.

*Common management*

For most of 2006 Kevin O'Sullivan was an officer of both Navillus and Time Square. Donal O'Sullivan was listed as the sole director of Time Square in its incorporation documents. Kevin gives Donal the relevant documents for possible new projects for Time Square, and Donal must agree to any projects. Both brothers were involved in the decision to put a Local 79 laborer to work and to pay him through Navillus. K.O. Tr. at p. 74 (23-25) – 75 (2-14); D.O. Tr. at p. 67, ln. 18-22.

These are closely-held companies, and each are co-owned by the O'Sullivan brothers. Even if one brother might be more involved in the day-to-day operations of one of the companies than the other, both brothers are the top managers of both companies. They talk frequently. Nov. 26 Tr. at p. 83 (ln. 19-25) – 84 (ln. 1-4).

*Centralized control of labor relations*

For purposes of employing Laborers, the O'Sullivan brothers control labor relations. Both had to agree that a Local 79 laborer would be hired and that Navillus would be Time Square's pay master. Time Square directed his day to day work and Navillus was responsible for applying the terms of the CBA. When Time Square sought another Laborer to replace Albanese, it hired one from Navillus. Kevin O'Sullivan told Local 79 that Time Square would only hire a replacement for Albanese if it was one of his "guys". He found the replacement - Barreston Morgan - by speaking with Navillus and determining that Navillus was satisfied with his work[9].

*Common ownership*

Kevin and Donal O'Sullivan each own 50% of Time Square and they each own 50% of Navillus. They share equally in each company's profit distribution. The ownership of the two companies is <u>identical</u>.

Accordingly, Navillus and Time Square are a single employer[10].

_____

[9] Again, the relevant issue is control of the labor relations involving the union. It is never a requirement in single employer cases that there be any common management of employees outside the union's jurisdiction – office employees, supervisors, sales representatives, and so forth.

[10] ICC Air Services Corp., 316 NLRB 395 (1995), relied upon by the Plaintiff, is completely different. One of the two entities had ceased operations and there was no common ownership. In Canned Foods, Inc., 332 NLRB 1449 (2000), one entity had no involvement in any aspect of the employment of people working for the other. Here, Time Square directed Albanese' work while Navillus was responsible for applying the CBA.

### ii.    Appropriate bargaining unit

The only bargaining unit that is relevant to this case is the one containing Laborers.  Local 79 does not seek to represent Time Square's office employees, and Local 79 does not represent Navillus' office employees.  Local 79 represents laborers whose duties include clean-up of construction debris and "general conditions" work.  As Kevin O'Sullivan testified, that is the work Albanese and Morgan performed for Time Square.  Nov. 26 Tr. at p. 84 (ln. 20-25) – 85 (ln. 2-18).  K.O. Tr.  at p. 58 he said he had expected Navillus laborers to perform that work although acknowledged that, with a cost-plus contract, Navillus would simply have passed along the payroll cost to Time Square.  Nov. 26 Tr. at p. 86, ln. 2-14.  In other words,  Albanese was performing precisely the work that would be performed by any Local 79 laborer, regardless of whether he was employed by Navillus or by Time Square.

Once again, the reality of this situation intrudes upon the Plaintiff's abstract arguments.  Albanese was covered by the Local 79 CBA while he was employed by Time Square.  It is impossible to conclude that he was not properly in the Local 79 bargaining unit.  He not only shared a community of interest with Local 79 laborers employed by Navillus, he was paid exactly the same wages and benefits. (For that matter, the current Local 79 Laborer employed by Time Square is also covered by the Local 79 collective bargaining agreement.  He was a Laborer for Navillus until he went to work for Time Square.)

This is not a surprising or unusual situation in the construction industry.  Construction industry companies employ workers from various trades and various times. The issue is not whether, in the abstract, there is a "single" appropriate bargaining unit

which applies to all of the employees of each company.  Indeed, that almost never happens, given the fact that different unions represent employees in different crafts. Instead, the relevant question is whether there is a single bargaining unit for the workers in that particular craft - here, for laborers.  Local 79 and the MTDC have collective bargaining agreements with other general contractors and construction managers. Cangelosi Tr. at p. 7 (ln. 19-25) -8 (ln. 2-18).  Thus, other general contractors and construction managers also employ laborers, and also apply the terms of the CBA to those laborers.  As discussed above, Time Square expected Albanese (and Morgan) to perform precisely the kind of general clean-up work he would have performed for Navillus – indeed the same work Kevin O'Sullivan had expected Navillus itself to perform.

Thus, for relevant purposes, the Local 79 Laborer employed by Time Square is in the same Local 79 bargaining unit at Navillus.  Bourgal v. Robco Contracting Enterprises, Ltd., 969 F. Supp. 854, (EDNY 1997)(unit of truck drivers at several different companies); Brown v. Dominic Prisco Transport, Inc., 1997 U.S. LEXIS 23709 (EDNY 1997)(unit of drivers even though types of customers were different).

Here again, the facts of this case appear to be somewhat unique.  In a typical single employer case the non-signatory employer argues that, because of their different pay and benefits and other differences in the type of work they perform, its employees should not be in the same bargaining unit with the signatory's employees.  There were no such differences here.  Albanese had identical wages and benefits because he was covered by the CBA.

At the November 26 hearing, counsel to Time Square asserted that the National Labor Relations Board does not certify single-employee bargaining units.  Apparently this was intended to show that Albanese was not Union-represented, or to support the contention that there was not an appropriate bargaining unit including the employees of Navillus and the employees of Time Square.  This assertion misses the point.  Even if the issue of  NLRB certification were relevant (and it is not), there certainly is no assertion that Navillus or the Navillus CBA is not covered by the National Labor Relations Act.

It should be noted that the Local 79 bargaining includes employees of many employers.  Navillus is a member of the Building Contractors Association, a multi-employer bargaining association.  The CBA covers the employees of all BCA contractors, whose employees are in a single Local 79 bargaining unit.  This is called a "multiemployer bargaining unit".  See Charles D. Bonanno Linen, 454 U.S. 404, 412 (1982); John Deklewa & Sons, 843 F.2d 770, 781 n. 13 (3rd Cir. 1988), cert. denied, 488 U.S. 889 (1988).  Thus, the bargaining unit includes many employees.

**C.    Alter ego**

Two enterprises are alter egos if they have "substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." Goodman Piping Products, Inc. v. NLRB, 741 F.2d 10, 11 (2nd Cir. 1984).  The concept of alter ego is different from the concept of single employer, and two companies can be a single employer for purposes of binding the non-signatory to a collective bargaining agreement even if they are not alter egos.  Lihli, 80 F. 3d at 748.  It is not necessary that the owners and managers of the two entities be the same.  Jacobson v. Metropolitan Switchboard Company, Inc., 2007 U.S. Dist. LEXIS 43901 at *18 (EDNY 2007)("similar

management and ownership"). Neither anti-union animus nor an intent to evade union obligations are required for a finding of alter ego status. Goodman Piping Products, Inc. v. NLRB, 741 F.2d 10, 12 (2nd Cir. 1984); Jacobson, 2007 U.S. Dist. LEXIS at *23.

Time Square was borne of Navillus. It has two projects, and Navillus is performing all the concrete and masonry work on both[11]. There was no meaningful distinction between the companies for most of 2006, and Time Square was not capitalized. Although the Plaintiff asserts that the two companies are in completely separate lines of business, that is not accurate. Navillus has served as general contractor on ten projects, and its work goes far beyond tile. The two companies have identical ownership and their economic interests are completely intertwined.

Although it is not necessary for the Court to reach the issue if it finds the companies to be a single employer for relevant purposes, Hahn Motors, Inc., 283 NLRB 901, 901 (1987), they are alter egos[12].

## II.    Enforcing Albanese's Rights

The CBA is enforced through the grievance and arbitration provision. If the MTDC went ahead with the arbitration against Navillus, an arbitrator could rule that the CBA was violated and could direct that Albanese be paid. Navillus would be liable, although it might seek reimbursement from Time Square. If not for the "broader issues" counsel alluded to at the November 14 conference, one would think Time Square would actively seek to participate in the arbitration to protect itself. Or perhaps Time Square knows it has nothing to worry about because Navillus' economic interests are aligned with Time Square's; the O'Sullivan brothers own both companies equally.

---

[11] The other is on 34th Street.
[12] By contrast, the entities in Hill Industries, 320 NLRB 1116 (1996), relied upon by the plaintiff, had almost nothing in common – not ownership, not customers, not management.

What if Navillus simply refused or failed to pay?  For example, if Navillus closed up shop without paying Albanese what he was owed under the CBA, there is no question Albanese (and the Unions) could and would seek payment from Time Square.  It is undisputed that the measure of what Albanese was owed was in the CBA

This is not a rhetorical exercise.  Navillus has, in fact, disclaimed responsibility for paying Albanese.  After a relatively short time, Navillus asserted that it would no longer serve as paymaster.  Whether or not Navillus had the right to do this, and whether or not Time Square had the right to impose a new paymaster without Local 79's permission, the fact is that Navillus walked away from its responsibility to pay Albanese the wages and benefits required by the CBA. This creates the Catch-22 faced by the Union and by Albanese:  Navillus says it is not obligated to pay Albanese for anything he did after Navillus declared itself not to be the paymaster, and Time Square says the CBA cannot be enforced against it.  This is precisely the situation in which both companies should appear before the arbitrator and be bound to do what the arbitrator says is required by the CBA.

It is true that Business Agent Cangelosi filed the grievance against Navillus.  That is the company that agreed to be paymaster.  As he testified, it is not his job to decide whether to arbitrate grievances and, if so, against whom.  Nov. 26 Tr. at p.102, ln. 21-25. Cangelosi certainly did not agree with the plaintiff's legal conclusion that Time Square and Navillus are not alter egos, joint employers, or a single employer.  The fact his grievance named Navillus does not amount to a waiver of the Unions' legal position, either.  Longstreet, 16 F. Supp. 2d at 299-300.  He testified, "That doesn't mean the non-

union entity or so-called contractor isn't responsible for the action causing the grievance." Cangelosi Tr. at p. 12, ln. 17-20.

### Conclusion

For these reasons, MTDC and Local 79 respectfully request that Time Square's request for an injunction to say the arbitration proceedings be denied and that Time Square be directed to participate in those proceedings.

Dated: December 11, 2007

By: _____
Lowell Peterson (LP  5405)

MEYER, SUOZZI, ENGLISH
 & KLEIN, P.C.
1350 Broadway, Suite 501
 New York, New York 10018
(212) 239-4999

Tamir W. Rosenblum (TR 0895)
Haluk Savci (HS 0853)
MASON TENDERS DISTRICT
COUNCIL OF GREATER
NEW YORK
520 Eighth Avenue, Suite 650
New York, New York 10018
(212) 452-9451

Counsel for Defendants

91026