UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
                                     :
Time Square Construction, Inc.,      :
                                     :
                 Plaintiff,          :
                                     :
       -against-                     :     07 CIV. 7250 ( SAS)
                                     :
MASON TENDERS DISTRICT COUNCIL       :
OF GREATER NEW YORK & LONG           :
ISLAND and Construction General Laborers :
JATC, LOCAL UNION No. 79,            :
                                     :
                 Defendants.         :
                                     :
------------------------------------ X


**TIME SQUARE CONSTRUCTION INC.'S**
**REPLY MEMORANDUM OF LAW IN FURTHER**
**<u>SUPPORT OF ITS MOTION FOR AN INJUNCTION</u>**


**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

*Attorneys for Plaintiff*

*Of Counsel:*
Joel E. Cohen
Leila Pittaway

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………ii

PRELIMINARY STATEMENT……………………………………………………1

ARGUMENT………………………………………………………………………3

I.     THE UNIONS DO NOT POINT TO ANY EVIDENCE
       SHOWING THAT TIME SQUARE IS THE ALTER-EGO OF NAVILLUS…………3

II.    THE UNIONS HAVE NOT SHOWN THAT
       TIME SQUARE AND NAVILLUS ARE  A SINGLE-EMPLOYER. ………………4

       A.     The Unions Do Not Point To Any Facts Showing
              that Time Square and Navillus Operate as One Company. . ………………4

       B.     Mr. Albanese and Navillus' Employees
              Are Not an Appropriate Bargaining Unit. . . ……………………………6

III.   THE FACT THAT NAVILLUS SERVED
       AS TIME SQUARE'S PAYMASTER DOES
       NOT MAKE THE COMPANIES JOINT EMPLOYERS. . . . …………………7

CONCLUSION………………………………………………………………………9

## TABLE OF AUTHORITIES

Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F. 3d 130 (2d Cir. 1997) . ...........................3

Canned Foods, Inc., 332 NLRB 1449, 1449 (2000). . ....................................................4

Crabtree v. Tristar Auto. Group, Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991). . ...................8

H.S. Care L.L.C.,  343 NLRB 659 (2004). . ............................................................7

Hill Indus., 320 NLRB 1116,  (1996) . ................................................................3

Horizon Plastics, Inc. v. Constance,
No. 00 Civ. 6458, 2004 U.S. Dist. LEXIS 10051 (S.D.N.Y. May 28, 2004) . .......................3

Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance,
No. 05-CV-7766, 2007 U.S. Dist. LEXIS 42725 (S.D.N.Y. June 12, 2007)...........................8

In the matter of Armen Digital Graphics, Ltd.,
96 Civ. 5844, 1997 U.S. Dist. LEXIS 11938, at * 26 (S.D.N.Y. Aug. 8, 1997) . ...................3

L&J Equip. Co., 274 NLRB 20, 27 (1985) . ...........................................................3

Marino Elec., Inc., 285 NLRB 344, 353 (1987)..........................................................5

Motion Picture Projectionists & Video Tech. v. Fred Corp.,
845 F. Supp. 1255 (N.D. Ill. 1994) . ................................................................7

NLRB v. Browning-Ferris Indus., 691 F.2d 1117, 1122 (3rd Cir. 1982) . ...........................4

NLRB v. Don Burgess Construction Corp., 596 F.2d 378, 386 (9th Cir. 1979). . ...................6

Pioneer Holding Co., 291 NLRB 1047, 1048 (1988) . ................................................3

Prospect Lefferts Garden Neighborhood Ass'n, 269 NLRB 670 (1984). . ...........................6

Stack Elec., Inc. v. Int'l Bhd. of Elec. Workers,
290 NLRB 575, 578 (1988). . .......................................................................7

 U.S. Reinforcing, Inc.,
Case 3-CA-25314, 2007 NLRB LEXIS 291 (Jul. 31, 2007) . ..........................................3

NYK 1138462-1.079158.0011

## PRELIMINARY STATEMENT

As set forth in detail in Time Square's opening and supplemental briefs, the Unions are attempting to haul Time Square into an arbitration under a CBA to which Navillus (not Time Square) is a signatory. After extensive discovery and a hearing before this Court, the Unions are unable to point to any facts or case-law that would support their assertion that Time Square is bound to Navillus' contractual obligations. Instead, the Unions make misleading and conclusory statements that are not supported by the record, and attempt to fit those "facts" into legal arguments that are not supported by the case-law. The Unions' attempt must fail.

The Unions' arguments are nothing more than a hail-mary attempt to bind Time Square to the Unions' collective bargaining agreement (the "CBA"). The Unions' closing plea in their brief for this Court to "enforce Mr. Albanese's rights" makes this point more clearly than any Time Square submission could. The Union insists that, if Time Square is not bound by an agreement *that it never signed*, Mr. Albanese runs the risk of not being paid. Nothing could be further from the truth.

The Unions are free to proceed against Navillus, Mr. Albanese's Paymaster, in an arbitration. As Joseph Cangelosi, the Unions' 30(b)(6) witness testified, the Unions' standard procedure is to proceed against the Paymaster. Cangelosi Tr.[1] at 12:6-15. Mr. Cangelosi clarified that "the Paymaster is responsible for the laborer's jurisdiction on the job. He is assuming responsibility." Id. at 13:13-18. As the Paymaster on the 8th Avenue Jobsite, Navillus is responsible for any and all Laborer work on site. Id. at 35:3 to 37:3. According to the Union, Navillus' responsibility did not end when it chose to stop being Paymaster because Navillus was "locked in" and remained obligated to enforce the CBA. Id. at 26:3 to 27:24. In other words, the

---

[1] "Cangelosi Tr." refers to the transcript of the deposition of Joseph Cangelosi taken on October 18, 2007, attached as Exhibit A to the Supplemental Declaration of Joel E. Cohen dated December 20, 2007 ("Supp. Cohen Dec.").

Unions believe that Navillus is responsible for any and all actions taken against Mr. Albanese in the course of his employment.

As such, and as Mr. Cangelosi repeatedly admitted, the dispute over Mr. Albanese's pay has *nothing to do with Time Square.* Id. at 48:25 to 50:3. The question remains: if the dispute has nothing to do with Time Square, why did the Unions attempt to haul Time Square into an arbitration under the CBA? The answer is that the Unions' assertion in the Demand for Arbitration that Time Square and Navillus are alter-egos or single-employers likely has little to do with ensuring that Mr. Albanese receives his pay. Rather, the Unions seek to bind Time Square not to the Local 79's CBA for purposes of enforcing Mr. Albanese's rights but for to unionize Time Square without an NLRB representation election. The Unions previously tried to unionize Time Square by picketing the jobsite on or about June 26 to July 5. Id. at 32:17 to 33:18, 42: 8 to 44:7. That attempt failed. Now the Unions are trying to unionize Time Square through arbitration and litigation.

This Court should not permit the Unions to force Time Square to unionize absent clear proof that Time Square and Navillus are alter-egos or single-employers. No such proof exists. Moreover, Time Square and Navillus are not made joint-employers by virtue of the fact that Navillus served as the paymaster for Mr. Albanese. As such, Time Square's motion for a preliminary injunction should be granted and the Unions should be precluded from hauling Time Square into an arbitration under a CBA to which it is not a party.

The relevant facts are set-forth in detail in Time Square's Memorandum of Law in Support of its Motion for a Preliminary Injunction and Supplemental Memorandum of Law in Support of its Motion for a Preliminary Injunction.

**ARGUMENT**

**I.    THE UNIONS DO NOT POINT TO ANY EVIDENCE SHOWING THAT TIME SQUARE IS THE ALTER-EGO OF NAVILLUS.**

The Unions dedicate less than a page of their 25 page brief to the argument that Time Square is the alter-ego of Navillus. Indeed, this "argument" does not contain a single case citation, which is telling – the Unions cannot point to any support because there is none. Def. Br. at pp. 17-19. The Unions say little on the subject because, in fact, there is no evidence of an alter-ego relationship.

The Unions' central argument is that there was "no meaningful distinction between the companies for most of 2006 [when Time Square was first formed]" Def. Br. at 23. No only do the Unions fail to elucidate the term "meaningful," they do not explain how the relationship between the companies in 2006 is relevant to the question of whether they were alter-egos at the time of the events in question or today. Not only do the Unions offer no support for their position, they ignore the many cases cited by Time Square, showing that the fact that Navillus helped Time Square get off of the ground does not mean that the companies are alter-egos today.[2] The simple fact is that Time Square and Navillus are separate companies that operate in separate lines of business, and have separate books, separate employees, separate insurance policies, and separate payrolls.

---

[2] See Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F. 3d 130 (2d Cir. 1997); Horizon Plastics, Inc. v. Constance, No. 00 Civ. 6458, 2004 U.S. Dist. LEXIS 10051 (S.D.N.Y. May 28, 2004); In the matter of Armen Digital Graphics, Ltd., 96 Civ. 5844, 1997 U.S. Dist. LEXIS 11938, at * 26 (S.D.N.Y. Aug. 8, 1997); U.S. Reinforcing, Inc., Case 3-CA-25314, 2007 NLRB LEXIS 291 (Jul. 31, 2007); Hill Indus., 320 NLRB 1116, (1996); Pioneer Holding Co., 291 NLRB 1047, 1048 (1988); L&J Equip. Co., 274 NLRB 20, 27 (1985).

## II.    THE UNIONS HAVE NOT SHOWN THAT TIME SQUARE AND NAVILLUS ARE A SINGLE-EMPLOYER.

In their brief, the Unions blur the lines between the concepts of single and joint employer by alleging that Time Square and Navillus can be held to be single-employers because they are "co-venturers" on the 8th Avenue Project and that a single Time Square employee is a Local 79 Laborer. Putting aside the fact that the Union's allegations are baseless, the arguments miss the point. Companies cannot be single-employers for one project or only as to one person. Rather, companies are single-employers when two "nominally disparate entities are actually part of a single integrated enterprise so that, *for all purposes*, there is in fact only a 'single-employer'." NLRB v. Browning-Ferris Indus., 691 F.2d 1117, 1122 (3rd Cir. 1982) (emphasis supplied). As the facts make clear, Time Square and Navillus do not have the type of relationship that would justify holding them to be single-employers "for all purposes."

### A.    The Unions Do Not Point To Any Facts Showing that Time Square and Navillus Operate as One Company.

A court may find that two companies are single-employers based on: (1) the interrelationship of operations; (2) common management; (3) centralized control over labor relations; and (4) common ownership or financial control of the companies. Canned Foods, Inc., 332 NLRB 1449, 1449 (2000). Except for the factor of common ownership (which is undisputed), the Unions have not shown that any of these factors support a single-employer finding.

First, the Unions do not point to any recent facts showing that Time Square and Navillus have interrelated operations. Rather, the Unions mistakenly argue that Time Square and Navillus can be held to be single-employers because they are purportedly "co-venturers" on the 8th Avenue Project. That argument does not hold water because, even if Time Square and Navillus

were co-venturers (which they are not[3]), the companies' relationship on a single project cannot bind Time Square to Navillus' union contracts as a single-employer. <u>Browning-Ferris</u>, 691 F.2d 1117 at 1122 (single-employer analysis is for "all purposes").  In any event, it is only of "marginal significance" to the single-employer analysis if the relationship between Time Square and Navillus is not "strictly arms-length." <u>Marino Elec., Inc.</u>, 285 NLRB 344, 353 (1987) ("deviations from a strictly arms-length handling" of transactions "only of marginal significance").

Second, the Unions argue that the fact that "both brothers are the top managers at both companies" and "talk frequently" shows that the companies have common management.[4]  The Unions are wrong.  While one can presume that Kevin and Donal talk frequently, they do not frequently discuss business.  The mere fact that Kevin is the top manager of Time Square does not mean he manages Navillus – he does not, nor does Donal manage Time Square.  The Unions also allege that Donal "must agree" to any new Time Square projects.  That allegation is false. To be clear, the Unions are referring to Donal's purported involvement in the brothers' decision to purchase new property.  Time Square does not buy or own property, and the decision to buy a

---

[3] The fact that Navillus is a large sub-contractor on the Project does not make the companies "co-venturers."  The Unions argue that Navillus and Time Square are co-venturers because, in essence, (1) Donal & Kevin are owners; (2) Time Square's construction management contract provides that the owners benefit from any savings; and (3) Navillus came onto the project at a below market rate to assure that Kevin & Donal, as owners, would get those savings.  This argument belies common sense.  While Kevin and Donal would benefit from any savings passed onto the owners, they would only get 50% of those savings since they only own half of the project.  On the other hand, if Navillus had charged exorbitant prices for the work, Kevin and Donal would have received 100% of those profits.  Time Square and Navillus have not acted with some nefarious purpose, but rather in each companies' economic interest.

[4] The Union also alleges that both brothers were "involved" in the decision to hire a Local 79 Laborer on the Project.  That statement is misleading.  Donal's only "involvement" was that he agreed on behalf of Navillus to serve as Paymaster.

new project is not Time Square's business.  In any event, Kevin makes the decision as to whether to purchase a new project not Donal. K. O'Sullivan Tr.[5] at 38:5-19.

Third, the Unions argue that Time Square and Navillus have centralized control of labor relations because Navillus served as paymaster for Mr. Albanese.  That argument flies in the face of the law.  The question of whether two companies have centralized control over labor relations focuses on whether two companies employ workers "interchangeably" or share common management affecting labor relations; not whether one served as paymaster for the other *on one occasion*.  In fact, in <u>Prospect Lefferts Garden Neighborhood Ass'n</u>, the NLRB held that two companies were not single-employers where one served as paymaster for the other *on multiple occasions*. 269 NLRB 670 (1984).

The true facts are that Time Square and Navillus are commonly owned companies operating in different businesses that do not share interrelated operations or management.  Kevin does not exercise any control over or receive a salary from Navillus.  Donal president does not exercise control over or receive a salary from Time Square.  Time Square's only connection to Navillus (other than on the basis of ownership) is that Navillus is one of many sub-contractors on Time Square's projects.  This is not the type of relationship that would warrant a finding by this Court that Time Square and Navillus are single-employers.  <u>See e.g.</u> <u>Canned Foods, Inc.</u>, 332 NLRB 1449, 1449 (2000).

B.    <u>Mr. Albanese and Navillus' Employees Are Not an Appropriate Bargaining Unit.</u>

As set forth above, Time Square and Navillus are not sufficiently integrated to constitute a single-employer.  As such, the Court need not decide whether, as the Unions argue, Mr. Albanese and Navillus' Local 79 employees are an appropriate bargaining unit.  <u>NLRB v. Don</u>

---

[5] "K. O'Sullivan Tr." refers to the transcript of the deposition of Kevin O'Sullivan taken October 26, 2007, attached as Exhibit B to the Supplemental Cohen Declaration.

<u>Burgess Construction Corp.</u>, 596 F.2d 378, 386 (9th Cir. 1979). In any event, the Unions' ill-conceived argument must fail because Mr. Albanese and Navillus' Local 79 employees are not an appropriate bargaining unit as a matter of law.

Mr. Albanese cannot be a part of the same bargaining unit as Local 79 Laborers employed by other companies absent Time Square's express consent. In the 2004 <u>H.S. Care L.L.C.</u> decision, the NLRB made clear that persons solely employed by one company and persons jointly employed by two companies cannot be appropriately put in the same bargaining unit absent explicit consent. 343 NLRB 659 (2004). In other words, even if the Court credits the Union's theory that Mr. Cangelosi is employed by both Time Square and Navillus, he cannot be placed in a bargaining unit with Local 79 Laborers employed by Navillus or any other company.[6]

Not only is it inappropriate to place Mr. Albanese in a multi-employer bargaining unit, Mr. Albanese cannot be a stand alone Laborer unit. Simply put, there is no such thing as a one man bargaining unit. <u>Motion Picture Projectionists & Video Tech. v. Fred Corp.</u>, 845 F. Supp. 1255 (N.D. Ill. 1994); <u>Stack Elec., Inc. v. Int'l Bhd. of Elec. Workers</u>, 290 NLRB 575, 578 (1988).

## III.  THE FACT THAT NAVILLUS SERVED AS TIME SQUARE'S PAYMASTER DOES NOT MAKE THE COMPANIES JOINT EMPLOYERS.

In a vain attempt to salvage the Unions' position that Time Square can be hauled into an arbitration under the terms of the CBA, the Unions argue that Time Square and Navillus are joint employers because Navillus agreed to serve as paymaster for Mr. Albanese. According to the

---

[6] In their brief, the Unions suggest that Mr. Cangelosi may be placed in a bargaining unit with other Local 79 members because Local 79 members employed by companies affiliated with the Building Contractor's Association ("BCA") are a "multi-employer bargaining unit." To be clear, Local 79 is a multi-employer bargaining unit because the members of the BCA consented to the arrangement. The fact that other employers consented to a multi-employer bargaining unit does not mean that Time Square can be bound by the arrangement.

Unions, since the CBA provides that a paymaster is a "joint employer," Time Square is bound to arbitrate under the agreement. The Unions offer no legal support whatsoever for their position, nor can they. These arguments fly in the face of black-letter law.

The Unions cannot bind a non-signatory third-party to the CBA simply because the CBA says it does. Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, No. 05-CV-7766, 2007 U.S. Dist. LEXIS 42725 (S.D.N.Y. June 12, 2007) ("It is "hornbook law" that a non-signatory to a contract cannot be bound to its terms) (citing Crabtree v. Tristar Auto. Group, Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991). Rather, this Court must determine whether Time Square is bound by the CBA as a matter of law. The Unions attempt to avoid this very simple legal principle by making the convoluted argument, in a footnote, that Section 3(c) of the CBA merely holds Navillus to be an "employer" and does not make a legal assertion of joint employer. To begin, if that was the case, the contract language would be irrelevant. However, Section 3(c) explicitly states that "[t]he Employer [Navillus] acknowledges and agrees *that it and the company for which it is paymaster are joint employers and one another's agent for all work performed at the site*." The provision does more than merely require Navillus to "acknowledge" that it is Mr. Albanese's employer, as the Unions argue, but rather purports to bind Time Square. As such, Section 3(c) is unenforceable.

The Paymaster system has been used in the construction industry for years to allow union workers to work for non-union companies without losing union benefits. As Mr. Cangelosi testified, the unions have historically taken the position that the non-union company is not subject to the CBA merely because it has used a Union paymaster; *i.e.*, the companies are not joint employers. Cangelosi Tr. at 12:6-15, 13: 8-18, 35:3 to 37:3. The fact that the Union is now deviating from that position can only be viewed as a reflection of their determination to unionize Time Square through litigation.

- 8 -

Further, the Unions make only a disingenuous attempt to distinguish the cases cited by Time Square which hold that a Paymaster *is not* a joint employer with the company for which it is acting. Again in a footnote, the Unions attempt to distinguish the cases on the basis of the unenforceable provision of the CBA that, as a matter of law, cannot bind an non-signatory. The Unions cannot, however, evade the on-point authority.

The only case presented to this court on the issue of whether a company is a joint employer with its paymaster is <u>Prospect Lefferts Garden Neighborhood Ass'n</u>. 269 NLRB 670, 673 (1984). There, the NLRB held that a company that, among other more relevant contacts, served as paymaster for a related entity was *not* a joint employer with that entity. This Court should follow the <u>Prospect Lefferts</u> reasoning and decline the Union's invitation to create new law i.e., hold that paymasters are joint employers with the companies who actually employ the employee in question that they serve.

## **CONCLUSION**

For the foregoing reasons, Time Square respectfully requests that this Court grant its motion for a preliminary injunction to enjoin the Defendants from hauling Time Square into an arbitration under the CBA because Time Square and Navillus are separate companies with different business purposes that cannot be held to be alter-egos or joint or single-employers.

Dated: New York, New York.
      December 20, 2007

Respectfully submitted,

By: _____
    Joel E. Cohen (JEC 5312)

McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173-1922
212.547.5400

    *Attorneys for Plaintiff*
    Time Square Construction, Inc.

NYK 1137694-4.079158.0011

- 10 -