UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

Time Square Construction, Inc.,
                   :

           Plaintiff,     :

                   :   07 CIV. 7250 ( SAS)

-against-           :

MASON TENDERS DISTRICT COUNCIL     **SUPPLEMENTAL AFFIDAVIT**
OF GREATER NEW YORK & LONG     :   **OF JOEL E. COHEN**
ISLAND and Construction General Laborers
JATC, LOCAL UNION No. 79,           :

            Defendants.    :
                   :

------------------------------------ X

       JOEL E. COHEN, pursuant to 28 U.S.C. 1746, declares under penalty of perjury as follows:

       1.     I am a member of McDermott Will & Emery LLP, counsel for plaintiff Time Square Construction, Inc. ("Time Square").  I am duly admitted to the bar of the Courts of the State of New York and to practice in the Southern District of New York.  I submit this declaration in further support of Time Square's motion for an injunction to enjoin Defendants Mason Tenders District Counsel of Greater New York & Long Island ("MTDC") and Construction General Laborers JATC, Local Union No. 79 ("Local 79") (collectively "Unions" or "Defendants") from pursuing claims against Time Square in any arbitration under the multi-employer collective bargaining agreement between MTDC and the Building Contractors Association (the "BCA").

       2.     Attached as Exhibit A is a true and correct copy of portions of the transcript of the deposition of Defendants through 30(b)(6) witness Joseph Cangelosi taken on October 18, 2007.

3.     Attached as Exhibit B is a true and correct copy of portions of the transcript of the deposition of Kevin O'Sullivan taken on October 26, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       December 20, 2007

                                            Joel E. Cohen

Sworn to before me this
20th day of December 2007.

Notary Public

JOANNE ALNAJJAR
Notary Public, State of New York
No. 02AL6164964
Qualified in New York County
Commission Expires May 7, 2011

NYK 1138227-1.079158.0011

- 2 -

# Exhibit A

# COPY

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
TIME SQUARE CONSTRUCTION, INC.,

                    Plaintiff,

          -against-                    Civil Action No.
                                       07-CV-7250
MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK & LONG ISLAND
AND CONSTRUCTION GENERAL LABORERS
JATC, LOCAL UNION NO. 79,

                    Defendants.
------------------------------------x

                    October 18, 2007
                    3:04 P.M.

          Deposition of Defendant

CONSTRUCTION GENERAL LABORERS JATC, LOCAL

UNION NO. 79, by JOSEPH CANGELOSI, taken by

Plaintiff, pursuant to Notice, at the offices

of McDermott Will & Emery, LLP, 340 Madison

Avenue, New York, New York 10173-1922, before

Charisse Romeo, a Shorthand Reporter and

Notary Public within and for the State of New

York.



**CLASSIC REPORTING, INC.**
**TOTAL LITIGATION SUPPORT**

ARTA PASCULLO, President

13 West 36th Street • New York, New York 10018
Tel: (212) 268-2590 • Fax: (212) 268-2596

12

1                    J. Cangelosi

2    that was using a union company as a Paymaster?

3        A.    Brought a grievance against the

4    nonunion company for using a Paymaster?  I

5    don't understand.

6        Q.    No.  What I'm asking, if I

7    understood your answer before, whoever is the

8    Paymaster, you consider to be responsible for

9    that employee; is that right?

10       A.    Right.

11       Q.    Has the union ever brought a

12   grievance against the nonunion company?

13       A.    Well, it wouldn't go against the

14   nonunion company, it would go against the

15   company handling the payroll.

16       Q.    Fine.

17       A.    That doesn't mean the nonunion

18   entity or the so-called contractor that isn't

19   covered isn't responsible for the action

20   causing the grievance.

21       Q.    Okay.  My question is:  Have you

22   ever actually filed a grievance or demand for

23   arbitration against a nonunion company?

24       A.    No.  No.

25       Q.    Okay.  There are situations, I

13

1                          J. Cangelosi

2    think you described earlier, where the

3    nonunion company actually is the entity that

4    wants to employ the laborer, the Local 79 man,

5    but they don't have a contract, so they are

6    put on someone else's payroll, correct?

7          A.    Correct.

8          Q.    What if -- what if the Paymaster

9    actually doesn't have the right to control the

10   work of that employee, what happens there?

11         A.    Well, he doesn't have the right

12   to control the actions, but that contractor

13   who takes on the role of the Paymaster is

14   responsible for the laborer's jurisdiction on

15   that job.  He is assuming responsibility.

16   That is made clear, that they are assuming

17   responsibility for our work on that job site

18   as long as that job is going on.

19         Q.    So let me just follow through and

20   see if I understand.

21               What you are saying is that if,

22   let's say, you have a nonunion company?

23         A.    Okay.

24         Q.    Okay, and you want to hire a

25   Local 79 man but, obviously, doesn't have a

26

J. Cangelosi

1

2      Q.      Why does it matter?

3      A.      Because someone took on the

4  responsibility for that job.  They are locked

5  in.  Whoever takes the Paymaster position on

6  that job, in their contract, it clearly states

7  they are taking that position from the start

8  of the job to the completion of the project.

9      Q.      And why, if the Paymaster's

10  purpose is simply to pay the money and bear

11  the responsibility for whatever happens on the

12  job, whether they are responsible or not, why

13  does it make a difference to the union if the

14  Paymaster is switched from one Local 79

15  contractor to another?

16      A.      It is just -- you know, first of

17  all if -- that's the agreement.  You are

18  taking responsibility on for this job.  You

19  are getting it from start to end.  You are

20  vouching for this company.

21          We are not going to go back and

22  forth 1400 times when, all of a sudden, I have

23  a problem on the job and now, I am coming to

24  you and you don't want to deal with it, so you

25  are going to back out of it.

27

1                        J. Cangelosi

2              You are taking responsibility

3      from here on in.  You are vouching for this

4      guy.  We don't know him.  He obviously has

5      some relationship with you, you know him, you

6      are vouching, you are taking responsibility

7      for the job.

8              Q.    Why does it make a difference

9      then in the beginning stages of who it is

10     going to be, do you have contractors that you

11     would rather be Paymaster?

12             A.    No.

13             Q.    It doesn't make a difference?

14             A.    Doesn't make a difference.

15             Q.    So it is for continuity purposes?

16             A.    Yes, and also, because you have

17     guys, once they start playing games, then the

18     guy who is locked in, taking responsibility,

19     he says, you know what?  I'm not going to

20     vouch for this guy anymore.  And now, he walks

21     away and we are back to square one.

22             How many times are we going to do

23     that?  Eventually, you'll be left with no

24     bargaining agreement there.

25             Q.    Nobody from Times Square who

32

1                          J. Cangelosi

2          Q.     So if you are not sure, I

3    assume --

4          A.     If you give me a couple of

5    seconds to just jog my memory.

6          Q.     Sure.   Absolutely.

7          A.     No, I don't remember.

8          Q.     You don't remember.   Did you have

9    any conversations with any representatives of

10   Times Square?

11             MR. PETERSON:   You are talking

12             about with respect to the separate

13             check?

14         Q.     In respect to Navillus no longer

15   being the Paymaster, the new check.

16         A.     No.

17         Q.     No.   Okay.   Now, did there come a

18   point in time when Local 79 started picketing

19   the construction project?

20         A.     Yes, we did.

21         Q.     And who was your dispute with

22   when you were picketing?

23             MR. PETERSON:   Objection.   That

24             is not relevant.

25             MR. COHEN:   I beg to differ.

33

```
1                    J. Cangelosi
2              MR. PETERSON:  Tell me why it is
3         relevant.
4              MR. COHEN:  I want to know who
5         they considered to be the employer.
6         Q.    Who was it that you were
7    picketing when you were -- when the union
8    picketed?
9         A.    At that point, we were picketing
10   Times Square Development.
11        Q.    At any point, were you picketing
12   Navillus?
13        A.    No.
14        Q.    And why were you picketing Times
15   Square and not Navillus?
16        A.    Because Times Square bought a
17   gentleman there who had no representative
18   doing our work, no representation on the job.
19        Q.    Was he there before Nick Albanese
20   started?
21        A.    No, as far as I know, no.
22        Q.    If he was there before Nick
23   Albanese started, would that make a
24   difference?
25        A.    No, it wouldn't make a
```

35

                              J. Cangelosi

1

2          A.    Right.

3          Q.    That Navillus was going to be the

4    Paymaster for that employee, that meant

5    Navillus was also going to be the Paymaster

6    for anybody doing work on the construction

7    project, no matter who they were working for,

8    and Navillus would be the Paymaster?

9          A.    Yes.

10         Q.    It doesn't make a difference if

11   it was Times Square or if it was some other --

12   if it was a general contractor or another

13   subcontractor?

14         A.    No, no, no.  Navillus took on

15   responsibility of covering the job of Local

16   79's jurisdiction of work for Times Square

17   Development.

18         Q.    Right.

19         A.    Any work on that job being

20   performed, laborer's work, Navillus is now

21   responsible for.  So now, if this guy brought

22   in another contractor doing fireproofing work,

23   Navillus is responsible for that.

24         Q.    Okay.

25         A.    Navillus is upholding our end of

                CLASSIC REPORTING, INC., 212-268-2590

```
 1                        J. Cangelosi
 2    the agreement.
 3            Q.   ' Okay.   Where exactly -- what
 4    agreement do you have that actually sets that
 5    forth that that's the understanding?       '
 6            A.     Our collective bargaining
 7    agreement.
 8            Q.     Your collective bargaining
 9    agreement says whoever is the Paymaster is now
10    assuming all responsibility of all work in
11    Local 79's jurisdiction, no matter who the
12    person is employed by --
13            A.     Absolutely.
14            Q.     -- on the project?
15            A.     Absolutely.
16            Q.     And that's how the union
17    interprets the CB agreement?
18            A.     Yes.
19            Q.     And it doesn't matter whether
20    Navillus has the ability to control what that
21    person is doing?
22            A.     Navillus took on responsibility.
23            Q.     Once they agree to be a Paymaster
24    for one person on a job?
25            A.     You are taking responsibility for
```

37

                    J. Cangelosi

1

2    our collective bargaining agreement on that

3    job site.

4         Q.    Let me go to the example I was

5    going to before, let me see if I understand.

6              .         Let's assume, and I think this     .

7    was the example, forget about if it was a

8    general contractor, once Navillus becomes a

9    Paymaster for any Local 79 person on the

10   job --

11        A.    Uh-huh.

12        Q.    -- whether it is the general

13   contractor, the construction manager or any

14   other subcontractor, anyone who -- any

15   employee who is now doing Local 79 work on

16   that job is now -- Navillus is now responsible

17   for that?

18        A.    Navillus took the role as the

19   general contractor, yes.

20        Q.    No.  As the Paymaster.

21        A.    As the Paymaster for the general

22   contractor on the job.

23        Q.    So even if the general contractor

24   wasn't employing the person, even if another

25   person was employing the person?

42

1                    J. Cangelosi

2           Q.    And again, I would assume, do you

3    know of them ever in any, whether public

4    sector or private sector, ever being a

5    construction manager or general contractor,

6    construction of a brand-new building?

7           A.    Offhand, no.

8           Q.    Now, going back to the question I

9    asked you earlier:  The union was picketing

10   Times Square alone?

11          A.    Yes.

12          Q.    It was not picketing Navillus?

13          A.    No.

14          Q.    Again, what was the reason you

15   were picketing Times Square?

16                When I say "you," I mean the

17   union.

18                MR. PETERSON:  Asked and

19          answered.

20                THE WITNESS:  What?

21                MR. PETERSON:  Asked and

22          answered.

23                MR. COHEN:  I don't remember the

24          answer.

25                (Record read.)

CLASSIC REPORTING, INC., 212-268-2590

43

1                          J. Cangelosi

2              Q.    So that was the reason you were

3    picketing Times Square?

4              A.    Yes.

5              Q.    And that didn't apply to

6    Navillus, obviously, correct?

7              A.    Correct.

8                    MR. COHEN:  And can I have this

9              marked as Plaintiff's Exhibit 2.

10                   (Colored photograph of a picket

11                   sign bearing production No. TIME

12                   SQUARE 01649 marked Plaintiff's

13                   Exhibit 2 for identification, as

14                   of this date.)

15             Q.    I am asking you to look at what's

16   been marked as Plaintiff's 2.

17                   Was this the picket sign that was

18   being used by the pickets who were picketing

19   the Eighth Avenue job site?

20             A.    I believe so.

21             Q.    Can you explain to me why the

22   sign says Local 79 was organizing construction

23   laborers employed by Times Square?

24             A.    Because the gentleman that was on

25   the job had no representation by a collective

44

J. Cangelosi

1

2    bargaining agreement, so we were trying to

3    organize Times Square Construction.

4         Q.    If I am understanding you

5    correctly, the picketing had actually nothing

6    to do with Mr. Albanese?

7         A.    No.

8         Q.    Now, in terms of Mr. Albanese,

9    the issue with Mr. Albanese, assuming Times

10   Square and -- assuming the union did not

11   believe that Times Square and Navillus were

12   the same company, if I understand you

13   correctly, if something happened to Mr.

14   Albanese on the job that the union was

15   protesting, the union would go against

16   Navillus because Navillus, as Paymaster, said

17   they would be responsible?

18             MR. PETERSON:   Objection as to

19        form.   I don't know what you mean.

20        Q.    Do you understand the question?

21             MR. PETERSON:   Excuse me.

22        Objection.   I don't know what you mean

23        by go against.

24        Q.    Would bring an arbitration, say?

25        A.    Against who?

48

1           J. Cangelosi

2           O'Sullivan and Kevin O'Sullivan

3           marked Plaintiff's Exhibit 3 for

4           identification, as of this date.)

5           MR. PETERSON:  Let me just say,

6      we initially indicated we would make

7      the head of the grievance department

8      available as our witness and there was

9      some concern made by your office that

10     that person would not be aware of --

11          MR. COHEN:  What I served was a

12     notice of deposition for a witness or

13     witnesses who would be able to answer

14     the questions, okay?

15          It doesn't have to be one witness

16     and it is made clear in the notice of

17     deposition.

18          So if you are telling me this

19     gentleman is not in a position to

20     answer these questions, then we're

21     going to have -- you have to provide a

22     person who will, but let me see if he

23     does have knowledge.

24          MR. PETERSON:  That's fine.

25     Q.    Why is it -- if I understand you

49

1                          J. Cangelosi

2    correctly, the reason why the union would have

3    filed a demand for arbitration against Times

4    Square is not because of the Paymaster System,

5    it is because you believe they are the same

6    company?

7          A.    No.

8          Q.    No?

9          A.    This was brought against

10   Navillus, I believe, to get the guy's checks

11   because they were trying to pay him under

12   something else.

13         Q.    So this has nothing to do with

14   Times Square?

15         A.    No.

16         Q.    And what you are looking at is

17   Plaintiff's Exhibit 3, correct?

18         A.    This is getting Nick his back

19   money.

20         Q.    And your understanding -- right,

21   and your understanding is that this is being

22   brought against Navillus because they were the

23   Paymaster?

24         A.    Right.

25         Q.    And it has nothing to do with

50

                          J. Cangelosi

1

2    Times Square?

3         A.    No.

4         Q.    Were you involved in making the

5    decision to file the demand for arbitration?

6         A.    Yes, I filed the grievance.

7         Q.    You are the one who wrote the

8    grievance?

9         A.    Well, the grievance department

10   handles that.

11        Q.    There is a clause in your

12   collective bargaining agreement -- you are

13   familiar with your collective bargaining

14   agreement?

15        A.    Yes.

16        Q.    I have your collective bargaining

17   agreement here.

18             MR. COHEN:  Mark this as

19        Plaintiff's Exhibit 4.

20             MR. PETERSON:  Well, this is the

21        independent agreement.

22             MS. PITTAWAY:  It should have

23        been attached to the contract.  Did I

24        make a mistake?

25             MR. COHEN:  Which agreement

# Exhibit B

# ORIGINAL

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

TIMES SQUARE CONSTRUCTION, INC.,

                Plaintiff,

       -against-              07-CV-7250

MASON TENDERS DISTRICT COUNCIL OF

GREATER NEW YORK & LONG ISLAND and

CONSTRUCTION GENERAL LABORERS JATC,

LOCAL UNION NO. 79,

                Defendants.

------------------------------------x

                    October 26, 2007

                    10:16 a.m.

        Deposition of KEVIN O'SULLIVAN, held

at the offices of Meyer, Suozzi, English &

Klein, P.C., 1350 Avenue of the Americas,

New York, New York, pursuant to Notice,

before John Ianno, Jr., a Notary Public of

the State of New York.



TRISTAR
COURT REPORTING SERVICE, INC.
Tel: 212.922.9144

*K. O'Sullivan*

1

2      Q.    Do you remember him contacting you

3  about the Chatman School?

4      A.    I don't.

5      Q.    What about your brother, Donal's

6  involvement in Times Square, what work has he

7  done, when I say work, I'm speaking very broadly

8  again, phone calls, signing documents, attending

9  meetings, whatever, what kinds of things has he

10  done for Times Square?

11      A.    On a day-to-day basis, nothing.

12  Locating new projects or new development sites,

13  you know.

14      Q.    Could you expand a little when you say

15  he looks at new projects and development sites?

16      A.    I'm the one who would be sourcing the

17  new project if I came, like a particular project,

18  as to Donal, I would ask him what would his

19  thoughts be, or would he invest as a developer.

20      Q.    So you would be doing the legwork, but

21  if something appealed to you, you and he would

22  make a decision together about whether to get into

23  that project; right?

24      A.    I would ask his opinion, what he would

25  think, but he would refer it back to me, being